THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES *v.* DYESS.

4-4814

Opinion delivered November 15, 1937.

*Alexander & Green* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Owens, Ehrman & McHaney* and *Paul B. Martin, Jr.,* for appellee.

McHANEY, J. On June 19, 1930, appellant issued and delivered to William R. Dyess, husband of appellee, its two policies of life insurance, one in the sum of $10,000, and the other in the sum of $5,000. The two policies are identical except for the face amount. Each policy provided for double indemnity in case of accidental death, and defines accident as follows: "Death from accident means death resulting solely from bodily injuries caused directly, exclusively and independently of all other causes by external, violent and purely accidental means and ensuing within 90 days of such injuries, but does not include death resulting from or caused directly or indirectly by self-destruction, sane or insane, disease or illness of any kind, physical or mental infirmity, military or naval service in time of war, *engaging as a passenger or otherwise in submarine or aeronautic expeditions or operations,* or by the insured's violation of any law. * * *." The italicized portion of the above-quoted clause forms the basis of the principal contention made in this lawsuit. Under the options contained in the policies, the beneficiary named therein, appellee, elected to have the net sum due thereunder applied under option No. 1, which provides that the proceeds may be paid as follows: "1. Deposit Option: Left on deposit with the society at in-

terest guaranteed at the rate of 3 per cent. per annum, with such excess interest dividend, as may be declared.''

It was agreed by the parties that appellant held on deposit for appellee the sum of $10,036.55, under the first policy above mentioned, being the face amount of said policy with interest, without prejudice to the rights of appellee to claim under the double indemnity clause of the policy. Under option No. 1, above quoted, appellant agreed to pay the beneficiary monthly installments at the rate of 3 per cent. per annum, plus such excess dividends as might be declared by it. The monthly installments under the terms of said policy, including the excess interest thereon, amount to $27.83 per month and the complaint alleged that the appellant was in default for four monthly payments, aggregating $111.32. Prayer was for judgment in that sum plus the additional sum of $27.83 for each month up to and including the date of final judgment, together with interest, a 12 per cent. penalty and attorneys' fees. Similar allegations were made as to the $5,000 policy, the monthly payments being alleged to be $13.91 per month, four of which were in default and for which a like prayer was made.

Appellant filed a petition and bond for removal to the federal court which was denied, and it then answered, admitting its liability for the face amount of each policy, but denying liability under the double indemnity provisions of said policies. It is conceded that on January 14, 1936, the insured was killed while a passenger on an American Airlines plane from Washington, D. C., to Little Rock, when the plane on which he was a passenger crashed near Goodwin, Arkansas. Appellant's only defense was that the insured's death resulted from engaging as a *passenger in aeronautic expeditions or operations*. Appellant, also, amended its answer, setting up numerous trips from and to Washington, from and to Little Rock, prior to his death in the airplane. Appellee, also, amended her complaint by alleging that since its filing she had learned that appellant pays a smaller rate of excess interest when payments are demanded monthly than on an annual basis, and that the excess interest rate

on the monthly basis amounts to 25 per cent.; that she is entitled, as of the date of the amendment, to fourteen monthly installments of $27.08 under the first policy, and fourteen such installments of $13.54 under the second policy, and she offered to accept said amounts in full settlement of her claims for interest from the amount left with appellant under said policies. It was later stipulated that the complaint might be so amended, and that the amounts set forth were correct. The above facts were all stipulated, and in addition, that the insured had no connection with the American Airlines, Inc., and that he had no direction or control over the operation of said airplane. Trial to the court, sitting as a jury, resulted in a judgment in appellee's favor for the monthly benefits sued for, which included, also, the benefits providing for double indemnity. The court also entered judgment for a 12 per cent. penalty and allowed attorneys the sum of $1,250 for attorneys' fees.

For a reversal of the judgment, it is first argued that the court erred in refusing to remove the case to the federal court. The basis of this argument is that since appellant is contingently liable for more than the jurisdictional amount of $3,000, that amount ought to control the jurisdictional question instead of the sum sued for, which is the aggregate amount of the monthly installments due at the time of trial. We think appellant is precluded on this issue in cases both in this and the Supreme Court of the United States, cited by appellant, which it attempts to distinguish from the case at bar. The cases referred to are *Mutual Life Insurance Company* v. *Wright,* 276 U. S. 602, 48 S. Ct. 323, 72 L. Ed. 726, affirming *Wright* v. *Mutual Life Insurance Co.,* 19 Fed. (2d) 117; *Standard Life Insurance Company* v. *Robbs,* 177 Ark. 275, 6 S. W. (2d) 520, and *Pacific Mutual Life Insurance Company* v. *McCombs,* 188 Ark. 52, 64 S. W. (2d) 333. The effect of these decisions is that the contingent effect of the judgment is not the test of jurisdiction, that is, that in the future the effect of the judgment rendered is to create a liability in excess of the jurisdictional amount, but that jurisdiction depends upon the amount demanded in the particular controversy before

the court. As said in the Wright case, *supra*: " 'The matter in controversy' was the amount for which appellant could recover judgment. That amount, which could not exceed $420, was much less than is required to confer jurisdiction on a federal district court. It is true that in this action the question was involved whether appellee was liable for double indemnity on past-due installments, and that a decision upon that question would work an estoppel as to the liability for future installments in an aggregate amount which would exceed the jurisdictional amount of $3,000." The court, therefore, correctly held that the case was not subject to removal because the amount demanded was less than $3,000.

Passing now to the principal contention made on this appeal, and that is that the exception in the double indemnity clause above quoted, that death from accidental means does not include death resulting from " * * * engaging as a passenger, or otherwise in * * * aeronautic expeditions or operations * * *," it is undisputed that appellant was a passenger in an airplane on a journey from Washington to Little Rock at the time he was killed. The question is, Was he engaged as a passenger in an aeronautic expedition or operation? If appellant meant to exclude liability for double indemnity while riding as a passenger or otherwise in any kind of aircraft, why did it not say so in such plain language that a wayfaring man, though a fool, might not be deceived thereby? It would appear a simple thing for a great institution, such as appellant, to write a clause in its policies exempting itself from such liability in plain and simple language. The word "aeronautic" here used, is an adjective and used in the sense of pertaining to aeronautics, and Webster defines the word "aeronautics" to be "the science that treats of the operation of aircraft; also the art or science of operating aircraft." The word "expeditions" as here used, means something more than a journey or a trip by airplane. Webster defines it as follows: "2. A sending forth or setting forth for the execution of some object of consequence; Progress. 3. An important journey or excursion for a specific purpose; as, a military or

exploring expedition; also, the body of persons making such an excursion.''

We do not appear to have had the exact language here used under consideration heretofore, but we have had somewhat similar language, and other courts have had occasion to construe the exact language. In *Benham* v. *American Central Life Insurance Company*, 140 Ark. 612, 217 S. W. 462, the clause in the policy excepted ''death while engaged in military service in time of war,'' and it was held that the exemption applied only in case of death while performing some duty in military service. The court said: ''That is to say, in order to exempt the company from liability, the death must have been caused while the insured was doing something connected with the military service, in contradistinction to death while in the service due to causes entirely or wholly unconnected with such service.'' In *Benefit Association Railway Employees* v. *Hayden*, 175 Ark. 565, 299 S. W. 995, 57 A. L. R. 622, it was held that a telegraph operator, killed while a passenger in an airplane, was not ''engaged in aeronautics'' within the meaning of the exemption clause in the policy. In *Missouri State Life Insurance Company* v. *Martin*, 188 Ark. 907, 69 S. W. (2d) 1081, we had before us the phrase in the policy, attempting to exempt the company, ''participating in aviation or submarine operations.'' The court there held that the word ''aviation'' was used in its adjective sense and limited or modified the word ''operations.'' In that case the court intimated that the language used in cases cited, that is, ''participating as a passenger or otherwise in aviation or aeronautics,'' might be sufficient to exempt the insurance company from liability for death of a passenger while in an airplane. This language is merely suggestive and it is dicta in that case as it was not necessary to a decision thereof. Moreover, it was there held that the word ''operations'' ''can only mean the management and control of the airplane,'' and the same thing is true in the case at bar. Appellant contends that the insertion of the word ''passenger'' in the clause now under consideration must be considered and that a person may engage as a passenger in aeronautic operations only by riding in an airplane. We do

not think the word "passenger" is affected by the word "operations." In other words, that a passenger does not engage in the operation of an airplane, no more than a passenger on a railway train engages in the operation of a train or a passenger in an automobile engages in the operation thereof. We think. the word "otherwise" in the clause under consideration has reference to the word "operations." The language is: "Engaging as a passenger, or otherwise, in * * * aeronautic expeditions or operations." This language is intended to cover passengers and others, passengers who engage in "aeronautic expeditions" and others who may engage in the "operations" of the aircraft.

Now, as to whether the insured was engaged as a passenger in an aeronautic expedition, two very well-reasoned cases are cited, which, to us, are very convincing. In the case of *Day* v. *Equitable Life Assurance Society*, 83 Fed. (2d) 147, the language in the policy issued by this same appellant was, "by engaging as a passenger, or otherwise, in submarine or aeronautic expeditions." There, the late Judge McDermott, speaking for the Tenth Circuit Court of Appeals, said: "Even if an ordinary airplane trip is an event fraught with hazard, it does not seem to follow that it is necessarily an expedition. All expeditions may be hazardous events, but all hazardous events are not expeditions. If a novitiate boarded an unbroken mustang, it would doubtless prove to be a hazardous event, but would not be accurately spoken of as an expedition. The New York court assumed that passengers never went on expeditions; that in order to reconcile the use by the insurance company of 'passenger' and 'expedition' in the same clause, some meaning should be given to 'expedition' which will reconcile it with the word 'passenger.' We doubt the assumption of fact. Wiley Post's lamented exploratory trip to the remote regions of the north was an expedition in its accepted sense, and Will Rogers was, as we understand, a passenger. Expeditions are sometimes accompanied by those who have no part in planning or executing the exploration, but who go as passengers or guests simply for the adventure. But even if there be a conflict in the

ordinary meaning of these two words selected by the insurance company in writing its policy, the rule in this jurisdiction is to resolve the ambiguity against the party selecting the words. *Graham* v. *Business Men's Assur. Co. of America*, (C.C.A. 10) 43 F. (2d) 673; *East & West Ins. Co.* v. *Fidel*, (C.C.A. 10) 49 F. (2d) 35; *Chase* v. *Business Men's Assur. Co. of America*, (C.C.A. 10) 51 F. (2d) 34; *Aschenbrenner* v. *U. S. F. & G. Co.*, 292 U. S. 80, 54 S. Ct. 590, 593, 78 L. Ed. 1137. Although entertaining the highest respect for the Court of Appeals of New York, we do not agree that there is a necessary ambiguity or conflict in a clause embracing passengers on expeditions; but if there were, the rule in this jurisdiction would be to resolve that conflict against the insurer rather than to extend the meaning of 'expedition' to reconcile it with the word 'passenger.'

"In the Aschenbrenner case, *supra,* the Supreme Court adhered to the established and wholesome rule that in construing contracts words 'will be given the meaning that common speech imports.' We do not believe any one, in common speech, would ever refer to an ordinary short trip in a plane as an 'expedition.' In any event reasonable men might differ on the point; and if so, then the ambiguous phrase should be resolved in favor of the customer who purchased the policy and not in favor of the company which drafted it."

The other case is one involving this same appellant and is *Provident Trust Company of Philadelphia* v. *Equitable Life Assurance Society*, 316 Pa. 121, 172 Atl. 701. The language under consideration was identical with that in the Day case, *supra.* The court said: "There is no difficulty in understanding many forms of activity that would be included in the words 'engaging * * * in submarine or aeronautic expeditions'; but traveling as a passenger would not, at first sight, seem to be such an engagement, and, where the question has arisen, it has been decided that an airplane passenger is not considered to be so 'engaged.' *Benefit Ass'n Ry. Employees* v. *Hayden,* 175 Ark. 565, 299 S. W. 995, 57 A. L. R. 622; *Peters* v. *Prudential Ins. Co.,* 133 Misc. 780, 233 N. Y. S. 500; *Masonic Accident Ins. Co.* v. *Jackson,* 200 Ind. 472,

164 N. E. 628, 61 A. L. R. 840; *Gits* v. *New York Life Ins. Co.*, (C.C.A.) 32 F. (2d) 7; *Price* v. *Prudential Ins. Co.*, 98 Fla. 1044, 124 So. 817; *Flanders* v. *Benefit Ass'n*, 226 Mo. App. 143, 42 S. W. (2d) 973.

"Appellant agrees that the phrases 'engaged in aviation' and 'engaged in aeronautics,' and similar expressions, have been held not to include one who was a passenger; but the brief suggests that: The words 'as a passenger' were inserted (in the policy) therefore to remove this doubt; but by adding the words 'or otherwise,' the expression became equivalent to 'anybody or everybody.' It may first be asked, if the purpose was to except passengers, why a clause simply except accident while a passenger in an aeroplane was not inserted? The difficulty is not so much with the words 'passenger or otherwise' as with the equivocal context 'engaging * * * in submarine or aeronautic expeditions.' The insured, when killed, was no more engaged in an expedition, in the common or normal sense of the word, than if he had been a passenger on a train or bus. A passenger engaged in an aeronautic expedition would seem to be one having some part in the conduct and operation of the expedition. On the other hand, if 'engaging as a passenger' was intended merely to describe persons who would be regarded as passengers within the ordinary meaning of that word, without having any part in the conduct of the aeronautic expedition, the phrase was not well chosen. Certainly, as the word is generally defined, a passenger takes no part in the operation of the vehicle in which he is carried. So far as appears, the parties used the words in their commonly understood sense and so intended them to measure their obligation."

Appellant cites and relies upon *Goldsmith* v. *New York Life Insurance Co.*, 69 Fed. (2d) 273; *Mayer* v. *New York Life Insurance Company*, 74 Fed. (2d) 118, 99 A. L. R. 155; and *Cristen* v. *New York Life Insurance Company*, 19 Fed. Sup. 440. In all of these cases, the language was, "engaging as a passenger or otherwise in aeronautic expeditions." The first two cases were from the Eighth and Sixth Circuit Courts of Appeals, respec-

tively, while the last case is from a district court of Illinois. It must be conceded that these cases support appellant's theory, but we think they are out of line with the better reasoned cases herein cited.

The result of our views is that the insured was engaged neither as a passenger or otherwise in an aeronautic expedition, nor in an aeronautic operation, and that the judgment of the circuit court is correct, and must be affirmed. It is so ordered.