[No. 22724.    Department One.    December 4, 1930.]

M. C. Fleming, *Appellant*, v. Joseph Buerkli *et al.,*
*Respondents.*[1]

*Robert B. Abel,* for appellant.
*Fred M. Bond* and *James P. Neal,* for respondents.

Tolman, J.—Appellant, as plaintiff, brought this
action to recover an alleged overpayment on account
of the purchase of certain dairy cows under a written
contract.    His complaint alleges the agreement for
the sale and purchase of 345 head of dairy cattle at
$117.50 per head, subject, however, to the rejection of
any cows which failed to pass a tuberculin test, and
that after the test it was found that 279 head were
suitable for delivery; that he paid the purchase price

for 279 head, but that the defendants failed, refused and neglected to deliver 36 head of the 279 head, and the prayer is for the recovery of the purchase price paid for the 36 head undelivered, amounting at $117.50 to a total of $4,230.

The answer admits the contract and the payment, but alleges the delivery and acceptance of all of the 279 head paid for, and, by way of what is denominated an affirmative defense and cross-complaint, alleges that, of the 279 cows delivered, accepted and paid for, the plaintiff left a certain number upon the defendants' farm for a long time after the sale, and they were obliged to, and did, feed and care for the same, and that the reasonable value of the feed and services in caring for the cattle so left amounted, at the time of answering, to the sum of $777.

The plaintiff demanded a jury trial, which was awarded him over the protest and exception of the defendants. The jury found a verdict in favor of plaintiff in the sum of $2,000, made certain special findings bearing upon the question of care of any cattle left by the plaintiff upon the defendants' premises; and after the verdict, the defendants moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court granted the motion for judgment n. o. v., from which judgment the plaintiff has appealed to this court.

Appellant's chief contentions here are that the court erred in setting aside the verdict, in granting a judgment to the respondents, and in refusing to enter a judgment on the verdict.

While the respondents objected and excepted to the awarding of a jury trial and now seem to argue, inferentially at least, that the case involved equitable issues and should have been tried to the court, still no error assigned directly raises that question. How-

ever, to clear the atmosphere and to determine whether or not the trial court was justified in regarding the verdict as advisory only, we have felt obliged to examine somewhat into that question.

The cause of action set up in the complaint is strictly an action at law and is triable by a jury. So far as the answer is an answer, it presents a strict legal defense to the plaintiff's cause of action, and no more. The new matter denominated a counterclaim can only come into being if and when the legal defense is established. In other words, unless the respondents can satisfy the jury that they delivered all of the cattle to the appellant and that they were accepted by him, then, of course, the undelivered cattle remained the property of the respondents and they were not entitled to charge the appellant with their keep. The equitable defense seeking the establishment and foreclosure of a lien for caring for the cattle is and must be based upon the cattle so cared for belonging to the appellant. Until that fact is established, the appellant cannot be held liable for the care of the cattle, and no lien can be established or foreclosed. Thus it will be seen that what is entitled as a counterclaim, and is thought to be an equitable defense to the action, is no defense at all to the plaintiff's cause of action, and can only arise if and when it is established that the plaintiff has no cause of action. There was therefore no error in awarding a jury trial. The verdict of the jury was not advisory only, but was as binding upon the trial court as would be the verdict in any other action at law.

The written contract which the parties entered into reads as follows:

"This agreement entered into this 16th day of September, 1929, between Joe Buerkli, seller, and M. C. Fleming, buyer. In consideration of forty

thousand five hundred thirty-seven dollars and 50/100 ($40,537.50) the receipt of five thousand five hundred thirty-seven dollars and 50/100, $5,537.50, which is hereby acknowledged, being the purchase price of three hundred forty-five cows and their natural increase. This herd of cows are known as the Joe Buerkli herd. Located on the old Brown Farm near Nisqually. The balance of the purchase price, thirty-five thousand dollars, $35,000, is to, be paid by the buyer after auction sale, that the seller agrees to put on, or hold on above mentioned farm on October 16-17, 1929. The buyer agrees to act as manager of said mentioned sale and to, pay all expenses of sale which he orders. The seller agrees to pay all personal taxes and mortgages and liens that is against above mentioned cattle—and he further agrees to care for the above said cattle until a reasonable time after auction sale without cost to the buyer. The seller agreed to have the above cattle tuberculin tested by the state authority and any of the cows reacting to said test are to be taken out at a pro rata cost of one hundred seventeen dollars and 50/100 ($117.50). The balance of purchase price is to be paid from the proceeds of the above mentioned auction sale.

"GEO. A. GUE      JOSEPH BUERKLI, *Seller.*
          "M. C. FLEMING, *Buyer.*"

This contract is thought to be ambiguous, and it may be so in some particulars, but enough evidence was admitted upon the trial to indicate clearly that the parties by their acts put a practical construction upon it which overcomes all ambiguity as to present issues. It appears that the herd of cows described in the contract was primarily a herd of dairy cows, and both parties took the position at the trial that appellant, as the buyer, was entitled to select sound dairy cows, and was not obligated to select or receive anything other.

The chief issue for the jury was: Did appellant select and accept the 279 head of dairy cows for which he paid? In determining whether the ruling of the

trial court was correct, we have only to ascertain whether there was any substantial evidence from which the jury could have found that appellant, in fact, selected and accepted a number less than 279. After reading both abstracts and referring to the statement of facts at considerable length, we are satisfied that there was such evidence.

Appellant testified that he sent his man to the ranch with instructions to clip, groom and prepare the cows for the sale, and that 279 or 280 cows were so clipped. In addition to the rejection of all cows which failed to pass the tuberculin test, appellant testified that he also rejected, with the consent and approval of the respondents, all cows with unsound udders which could not be properly classed as dairy cows, marking with a red "X" all such rejected cows, some fifty in number. The jury may have found that these rejections in whole or in part were made after the cows were clipped; that respondents acquiesced therein, and that, in fact, by the agreement of both parties, a shortage of at least twenty-eight cows existed. It is true that on cross-examination the appellant testified:

"A. The cows I accepted I clipped, had my man condition for the sale. Q. The cows then that you accepted were those that you selected yourself? A. Yes;"

but from all of the testimony in the case, the jury could readily have found that the acceptance there referred to was a conditional acceptance only, and subject to the right to later reject all cows so clipped which were found to have unsound udders. This being the state of the record, and it being the settled law of this state that a judgment *non obstante veredicto* can be granted only where there is no evidence and no reasonable inference from evidence upon which it can

rest, *Brown v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166, it follows that the judgment must be reversed.

Reversed and remanded with instructions to pass on the motion for a new trial.

MITCHELL, C. J., HOLCOMB, PARKER, and MAIN, JJ., concur.

