[No. 30204. Department Two. August 21, 1947.]

LESTER W. THAYER et al., *Appellants*, v. LENA M. BRADY, as *Executrix, et al., Respondents.*[1]

*Rummens & Griffin* and *Kenneth P. Short,* for appellants.

*Catlett, Hartman, Jarvis & Williams,* for respondents.

HILL, J.—Brady Construction Company, a copartnership consisting of C. D. Brady and C. Ted Brady, had the general contract for a war housing project known as Stadium Site, which was being erected by the Federal public housing authority, hereinafter referred to as the housing authority. Consolidated Painters, likewise a copartnership, represented throughout the transactions herein referred to by Lester W.

[1] Reported in 184 P. (2d) 50.

Thayer, had the painting subcontract, which provided that Consolidated Painters would

" . . . furnish on the above named Project all labor, material, and complete all painting, all according to plans, specifications, addenda and approval of Architects . . . for the sum of NINETEEN THOUSAND EIGHT HUNDRED SEVEN AND No/100 DOLLARS ($19,807.00)."

It was signed by C. D. Brady, for Brady Construction Company.

Neither party to this subcontract understood that beveled cedar siding was to be painted. The representatives of the housing authority insisted that, under the general contract, Brady Construction Company was obligated to paint such siding.

On April 20, 1943, C. D. Brady, representing Brady Construction Company, and Lester W. Thayer, representing Consolidated Painters, entered into an agreement covering the painting of the siding in question, which agreement was evidenced by the following document:

"Brady Construction Co.          April 20th 1943.
"1166 Mercer St.
"Seattle Wash.
"Gentlemen;
"Our proposal to paint two coats of paint as *CDB*—specified, all exterior *Beveled* siding on the exterior of War Housing Project No. 45192. Now being built at the Stadium Site, is as follows.
"We will furnish all labor and materials to complete this work for the sum of .40 cents per square yard.
"Consolidated Painters.
By Lester W. Thayer [signed]
Lester W. Thayer.
"BRADY CONSTRUCTION CO.
"1166 MERCER—MAin 7975—MElrose 1935
By C. D. Brady [signed]
Accepted.
"*Note—If can be sprayed deduct 2¢ pr yd*
"BRADY CONSTRUCTION CO.
"1166 MERCER—MAin 7975—MElrose 1935
*CDB*"

The italics represent longhand interpolations by C. D. Brady, and the initials "CDB" were placed thereon by C. D. Brady. Spraying was permitted, which made the effective price thirty-eight cents per square yard.

There were 7,348.9 square yards of such siding to be painted, and the work was completed by Consolidated Painters on August 20, 1943.

This is an action to recover the contract price of $2,792.50, together with interest from August 20, 1943. C. D. Brady having died, the action is against his executrix and the surviving partner. Their position is that there was no consideration for the contract of April 20, 1943, because Consolidated Painters was already obligated to do the work by the terms of the subcontract, it having agreed to complete all the painting required on the project according to the plans and specifications pertaining to the general contract. They contend, also, that the terms of the general contract made the housing authority the final authority on the interpretation of the plans and specifications.

Whether the specifications referred to in the subcontract required the painting of the beveled cedar siding, is not clear. There is an ambiguity and uncertainty on which reasonable minds might differ. Both parties to the subcontract, experienced contractors, and we assume experts in their fields, read these specifications and concluded that they did not include the painting of beveled cedar siding. Three levels of the housing authority hierarchy concluded the other way, but, while that may have been decisive so far as Brady Construction Company was concerned, it was in no sense binding on Consolidated Painters. The latter had not agreed to be bound by the interpretations of the housing authority. Ambiguity and uncertainty in the specifications created ambiguity and uncertainty in the subcontract between Brady Construction Company and Consolidated Painters, leaving it a matter of interpretation whether the latter was obligated to paint the siding under the original subcontract. The parties to that contract were in accord that the plans and specifications did not require the painting of the siding, and it is the appellants' position that, before

any of the work was done, they acted upon that interpretation by executing the agreement of April 20, 1943.

■ We are in accord with the position taken by the appellants. The parties said, in effect, that so far as they were concerned the subcontract did not cover the painting of the siding, and they made a new contract to take care of it. The interpretation which the parties have placed on a contract is entitled to great, if not controlling, weight in determining its interpretation. 17 C. J. S. 755; 12 Am. Jur. 787; *Mitau v. Roddan,* 149 Cal. 1, 84 Pac. 145, 6 L. R. A. (N.S.) 275; *Wiebener v. Peoples,* 44 Okla. 32, 142 Pac. 1036, Ann. Cas. 1916E, 748; *Fleming v. Buerkli,* 159 Wash. 460, 293 Pac. 462; *Continental Ins. Co. v. Harris,* 190 Ark. 1110, 82 S. W. (2d) 841.

In *Wiebener v. Peoples, supra,* a construction contract was involved, and the eighth headnote reads as follows:

"Where the language of a contract is uncertain and the parties thereto, by their subsequent acts and conduct, have shown that they construed it alike and within the purview of the constructions permitted as possible by such language, the courts will ordinarily follow such adopted construction as the correct one."

In *Fleming v. Buerkli, supra,* the Washington case cited, this court said:

"This contract is thought to be ambiguous, and it may be so in some particulars, but enough evidence was admitted upon the trial to indicate clearly that the parties by their acts put a practical construction upon it which overcomes all ambiguity as to present issues."

Both parties to the subcontract were agreed on their interpretation of the specifications as not including the painting of the siding, but respondents take the position that the agreement of April 20, 1943, was not what it purported to be, a new contract covering the siding, but that it was merely a document in the nature of a proposal from Consolidated Painters which Brady Construction Company needed as a basis to secure an allowance for the painting of this siding as an extra. This position hinges entirely on the

testimony of C. Ted Brady that such was the purpose of the document.

◼ Passing the question of the admissibility of the testimony of Mr. Brady, if the intention of the parties in executing the agreement of April 20, 1943, is to become the pivotal point in the case, we do not believe that the testimony produced by the respondents outweighs the natural and logical conclusion that the parties to the agreement meant exactly what it stated, particularly in view of the fact that both parties to the original subcontract believed that it did not cover the painting of the siding.

C. Ted Brady admittedly was not present when the second agreement was signed and knew nothing of what had occurred at that time. The record does not substantiate his testimony that this was intended only as a proposal. On its face, the document was more than a proposal; there was an acceptance, and a resulting contract. The care with which C. D. Brady interpolated "Beveled" and "Note—If can be sprayed deduct 2¢ pr yd" in his own handwriting evidenced that it was not just something to be submitted to the housing authority to support a claim for an extra.

In *Floyd v. Ring Const. Corp.*, 66 F. Supp. 436, a supplemental agreement of April 1, 1942, was held to be evidence of the interpretation which the partners had placed on a contract dated June 3, 1941, and the court held that the plaintiff's testimony of his purpose in executing the second agreement was not sufficient to overcome its plain purport.

*Queen City Const. Co. v. Seattle*, 3 Wn. (2d) 6, 99 P. (2d) 407, on which respondents rely, involved the single question of whether the work for which the construction company was claiming compensation was an extra ordered by the city engineer for which no price was provided in the contract, or whether it was something which the construction company was obligated to do under its contract. The present case involves the right to compensation for work performed under a second formal contract, which work both parties believed was not covered by the original subcontract.

We hold, from the evidence and the inferences to be drawn therefrom, that the contract of April 20, 1943, is just

what it purports to be, and that it is not a contract to do something which Consolidated Painters was already bound to do, but a contract to do something which both parties to the ambiguous original subcontract were then agreed was not covered thereby.

The judgment is reversed, with instructions to enter a judgment in favor of the appellants in the sum of $2,792.50, and with direction to the trial court to determine, if the parties cannot agree, the date from which interest thereon should be computed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.

September 25, 1947. Petition for rehearing denied.