MONONGAHELA INSURANCE COMPANY v. BATSON.

Opinion delivered January 26, 1914.

1. INSURANCE—CONTRACT—CONSTRUCTION.—Where there is any ambiguity in the terms of a contract of fire insurance, the doubts must be resolved in favor of the insured. (Page 172.)

2. CHATTEL MORTGAGE—DEFINITION.—The term "chattel mortgage" defined as a bill of sale with a defeasance clause incorporated in it. (Page 173.)

3. CONTRACTS—CHATTEL MORTGAGE—WHEN NOT CREATED.—A contract which recited that B. was indebted to R. in a certain sum for goods and money furnished, and agreed that certain lumber belonging to B. should be the property of R. and should not be disposed of without his consent; and that the parties, desiring to sell certain of the lumber to C., agreed that C. might purchase the lum-

ber, the title remaining in R. until paid for, C. agreeing to pay the debt due by B. to R. before moving the lumber; *Held*, not to constitute a chattel mortgage on the lumber. (Page 173.)

Appeal from Polk Circuit Court; *Jefferson T. Cowling*, Judge; affirmed.

### STATEMENT BY THE COURT.

The appellee sued the appellants on insurance policies issued by them respectively for the amounts alleged in the complaint. The appellee alleged that he had complied with the provisions of the policies on his part and that the loss occurred by fire on the property of the assured; that the appellants had each refused to pay the amounts covered by their respective policies; that demand had been made on appellants for same. Appellee therefore asks judgment against each of the appellants for the amounts covered by the respective policies issued by each of them, and that he further have judgment for the penalty of 12 per cent and for the attorney's fees allowed under the statute.

The appellants each answered setting up substantially that the policies issued by them, respectively, contained a provision that the same should be void if the property insured, consisting of personal property, "be or become encumbered by a chattel mortgage." The suits were filed separately against each of the appellants, but they were consolidated and tried as one suit, the defenses in each case being the same. The policies were introduced and each contained the following provision: "This entire policy, unless otherwise provided for by agreement endorsed hereon or added hereto, shall be void if the subject of insurance be personal property and be or become encumbered by a chattel mortgage."

The appellants were allowed to read to the jury the following instrument:

"*Whereas*, This contract made and entered into by and between Will Batson, Ed Clinton and Will Ross, witnesseth:

"That, whereas Will Batson is justly indebted to

Will Ross in the sum of six hundred dollars for money and goods furnished by said Will Ross to enable him to run his mill and cut lumber on the Churchwell land about three miles west from Beaver Town in Polk County, Arkansas, and the understanding and agreement between said Will Batson and Will Ross that all lumber sawed at such mill should be the property of Will Ross and should be shipped in his name, and that same should not be sold or disposed of without the consent of said Will Ross; and,

"*Whereas,* Said Ed Clinton now desires to buy said lumber and that there is now on the mill yard on the place aforesaid about something like three hundred thousand feet of lumber now in stacks. Therefore this agreement witnesseth that each of the parties hereto have agreed and they do each hereby agree that said Ed Clinton may purchase the said lumber with the distinct understanding that the title thereto shall not pass to Clinton, but shall remain in Will Ross until the debt due Will Ross by Will Batson is fully paid. And the said Ed Clinton does hereby specially agree that he will pay the debt due to Will Ross by Will Batson, before the said lumber shall be removed or sold, and that he will pay the said Will Ross within ...... days the said sum due him whether the lumber is removed or sold or not; but that in any event he will pay when the lumber is removed, if removed before that many days have elapsed.

"This, the............day of........................., 1911.
(Signed)                          "W. E. Clinton,
                                  "W. J. Batson.''

It was shown that this contract was executed on the 6th of June, 1911.

Appellee testified, among other things, that he delivered the above instrument to Will Ross for the purpose of securing him in the sum of $600 that he owed him. The lumber described in the instrument set out was the identical lumber described in the policies. At the time of the fire the debt of $600, mentioned in the above contract, had not been paid to Ross.

There was testimony on behalf of appellants to the effect that Batson owed Will Ross on July 7 and on July 20, 1911, the sum of $600, that this $600 was the same money secured by Ross by the written contract; that Ross had no interest in the lumber except as security of debt, nor did he have any money coming from the sale of the lumber except the $600 that was owing on account of advances made to plaintiff.

The court, over the objection of appellants, gave the following instructions:

"10.   You are instructed that the defendants alleged that at the time of the issuance of these policies in question, that the property was encumbered by a chattel mortgage, created by plaintiff with W. E. Clinton on behalf of Will Ross, to secure a debt owing by the plaintiff to Will Ross, unless you find from the preponderance of the evidence that this was a chattel mortgage and not an agreement for the sale of the timber to Clinton, you will find for the plaintiff on this issue."

"11.   If you believe from the evidence that the instrument introduced by the defendant, and signed by Batson and Clinton, was intended by the parties to be an agreement of W. E. Clinton's to pay the debt of Will Ross, or was intended by the parties to evidence a sale of lumber to Clinton, you will find for the plaintiff on this issue."

The appellants duly saved their exceptions to the giving of these instructions.

The appellants requested the court to give the following:

The uncontradicted evidence shows that each policy sued on contains a provision that the policy shall be void if the property be personal property and be or become encumbered by a chattel mortgage.  It further shows that the property described in the policy was personal and that the same about June 6, 1911, became encumbered by a chattel mortgage to secure a valid indebtedness which was in force at the time of the fire.  You will, therefore, return your verdict for each of the defendants.

The court refused this prayer, and appellants duly excepted to the ruling.

The verdicts were in favor of the appellee. Judgments for the amount of the several verdicts were rendered against the appellants, respectively, to reverse which they have duly prosecuted this appeal.

*Wm. Thompson,* of Dallas, Texas, and *J. I. Alley,* for appellants.

1. The instrument was a chattel mortgage and avoided the policies. 13 Ark. 112; 31 *Id.* 69; 14 Pac. 247; 13 Atl. 666; 31 N. Y. 542; 229 N. W. 78; 49 *Id.* 169; 19 S. W. 1087, 9 Ark. 112; 47 Am. Dec. 732; 35 S. W. 428; 90 *Id.* 850; 138 Fed. 497; 58 Pac. 276; 80 N. W. 1047; 26 S. E. 856; 55 S. W. 740.

2. A verdict should have been directed for defendants. 21 S. W. 1062; 90 *Id.* 850.

*Wright Prickett* and *Elmer J. Lundy,* for appellee.

The instrument was not a "chattel mortgage." The term is unambiguous and the courts will construe it according to its plain legal meaning. May on Ins., § 175: 97 Ark. 425; 62 *Id.* 425; 94 *Id.* 417; 62 *Id.* 348; 99 *Id.* 428; 102 *Id.* 1, 48 L. R. A. 770; Jones on Ch. Mortg., § 17 (5 ed.); 35 Ark. 156; 96 N. E. 715; 92 U. S. 516; 9 Cyc. 577-8; 38 Ark. 264; 56 Ark. 320; 53 *Id.* 5865.

WOOD, J., (after stating the facts). Under the pleadings, the uncontradicted evidence and the instructions of the court, the only question for our determination on this appeal is whether or not the instrument set forth in the statement is a chattel mortgage, for if it is a chattel mortgage, under the terms of the policy, it renders the insurance contracts void, and the appellee was not entitled to recover, and the instructions given by the court were erroneous, and the court erred in not giving the prayer for instructions on behalf of appellants. But on the other hand, if it is not a chattel mortgage, the instructions of the court were more favorable to appellants than they were entitled to, and they could not have been prejudiced by the giving of same, and the verdicts and

judgments were correct and should be affirmed. The terms "chattel mortgage," used by the appellants in their policies of insurance, must be interpreted according to their strict legal meaning. The appellants have not seen proper to provide, in their insurance contracts, that the policies should be rendered void by equitable liens then existing or that might be thereafter created during the period of the insurance contract by the assured in favor of third parties. The appellants have plainly designated a "chattel mortgage" as the ground of forfeiture of rights under the policy, and the court will not create a forfeiture by construing the term "chattel mortgage" to mean some other liens created in some other way than by a chattel mortgage. The rule, where the terms of the contract are unambiguous, is to construe them according to their plain meaning, but where there is any ambiguity the doubts must be resolved in favor of the insured and against the insurer in order to prevent a forfeiture of the contract of insurance. This court, in *German American Insurance Company* v. *Humphrey,* 62 Ark. 350, said:

"The courts, by interpretation, can not engraft upon insurance contracts any more than upon any other a meaning totally foreign to that which the plain terms employed by the parties themselves convey."

It is undoubtedly true that where the contract on account of any ambiguity of the language used is reasonably susceptible of different constructions, that construction should be adopted most favorable to the insured. *German Am. Ins. Co.* v. *Humphrey, supra; Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417; *Brotherhood of L. F. & E.* v. *Aday,* 97 Ark. 425; *Atlas Fire Ins. Co.* v. *Malone,* 99 Ark. 428; *American Bonding Co.* v. *Morrow,* 80 Ark. 49; *Surety Co.* v. *Fulton,* 89 Ark. 471; *Home Insurance Co.* v. *Ice & Electric Co.,* 86 Ark. 538; *Hope Spoke Co.* v. *Md. Casualty Co.,* 102 Ark. 1.

Applying these familiar rules to the instrument contained in the statement, alleged by the appellants to be a chattel mortgage, we unhesitatingly say that whatever

equitable or other lien it may have created in favor of Ross against the property insured, it was not a chattel mortgage, and it is not necessary for us to determine here what the real character of the instrument is.

In the recent case of *Clinton* v. *Ross*, 108 Ark. 442, 159 S. W. 1103, when the same instrument was under review, we said:

"In conditional sales of personal property where the title is retained by the vendor until the purchase price is paid, the vendee acquires an interest that he can sell or mortgage, etc., * * * the contract entered into between the parties here is an agreement upon the part of the appellant (Clinton) to pay the debt owed by Batson to appellee (Ross), the amount of which is specified therein and a recognition of his (Ross's) right to the lumber until the payment thereof."

It suffices to say that the instrument under consideration does not come within the definition of a "chattel mortgage" as given by standard law writers on that subject. Cobbey says: "Perhaps the simplest definition of the term 'chattel mortgage' is a bill of sale with a defeasance clause incorporated in it." 1 Cobbey, Chat. Mort., § 2; Jones, Chat. Mort., § 1; Pingrey on Law of Chat. Mort., § 1; Bouvier, Chat. Mort.

There is no defeasance clause in the instrument under consideration, and such clause is essential to a chattel mortgage.

The judgments were correct, and they are affirmed.