CONTINENTAL INSURANCE COMPANY v. HARRIS.

4-3848

Opinion delivered June 3, 1935.

*Mark Woolsey,* for appellants.

*Jeta Taylor* and *G. C. Carter,* for appellees.

MEHAFFY, J. The appellee, T. R. Harris, was the agent of appellants and conducted an insurance agency at Altus, Franklin County, Arkansas. He was indebted to several insurance companies, the aggregate amount being $1,033.02, and on July 30, 1932, executed the following assignment to William R. Nentwig:

"Know all men by these presents: That we, the undersigned, owners of the T. R. Harris Ins. Agency, for the purpose of providing security for all sums owing by the said agency for any account whatsoever to the fire and casualty insurance companies and general agents represented by said agency, and for the purpose of preserving, maintaining and increasing the value of the said agency for the benefit of all parties at interest, do hereby assign, transfer and deliver to Wm. R. Nentwig, trustee, the entire business and good will of the said agency including all books, records, expirations, accounts, notes, moneys, credits and effects with full authority to take charge of and operate the said business, or at his discre-

tion to sell the said business, or any part of the said assets.

"And we do hereby covenant and agree with the said trustee, his successors or assigns, that, except as authorized by the said trustee, we will not, during the period of such trusteeship, or in the event of a sale of the business, for a period of five years thereafter, directly or indirectly engage in the solicitation or business of fire or casualty insurance in Franklin County, Arkansas, or furnish to any person not properly entitled thereto, any information whatsoever regarding the business or expirations of the said agency, or in any manner interfere with the said trustee or purchaser of the said agency in procuring and holding renewals of the business of the said agency.

"Provided, that the proceeds of any sale of the business or assets of the said agency and/or any profits derived from the operation of said agency by the said trustee, shall be first applied toward the liquidation of any indebtedness of the said agency to the said fire and casualty insurance company or general agent, with interest thereon at the legal rate, shall have been fully liquidated, any moneys or other assets of the said agency when remaining in the hands of the said trustee shall be reassigned and revert to the undersigned.

"In testimony whereof, we have hereunto set our hands and seal this 30th day of July, 1932. T. R. Harris."

On the same day W. R. Nentwig executed the following bill of sale:

"Bill of Sale and Trust Agreement

"Whereas, T. R. Harris, agent and/or T. R. Harris insurance agency, Altus, Arkansas, is indebted to the insurance companies and general agents in the approximate amount of $1,033.02 all of which is past due, and

"Whereas, W. Rudy Moore, Altus, Arkansas, is desirous of buying and retaining the agency of said insurance companies and of having the assistance and cooperation of said companies and general agents in maintaining, preserving and increasing the value of the business, expirations and good will of said T. R. Harris Insurance Agency for the benefit of the insurance com-

panies and general agents who have a legitimate interest therein,

"Now therefore, in consideration of these premises and the further consideration of the sum of seven hundred and no/100 dollars ($700) and of the stipulations hereinafter mentioned and set forth it is hereby agreed between Wm. R. Nentwig, trustee, hereinafter called trustee or party of the first part, and W. Rudy Moore, hereinafter called party of the second part or agent, as follows:

"'1. Subject to earlier maturity for breach of contract and said companies and general agents agree to extend and accept payment of the purchase price of the said agency at the time and in the manner hereinafter provided.

"'2. The said party of the second part hereby agrees to pay on the above purchase price as follows: $25 in cash upon the execution of this contract and a sum of not less than $25 nor more than the gross commissions on renewals and new business of said agency on the first day of each month thereafter, until the total purchase price of $700 shall have been liquidated in full. The said party of the second part also agrees to use his best efforts in the liquidation of all accounts receivable, bills and notes of the said T. R. Harris Insurance Agency turned over to him by the said trustee, and all such funds which may come into his possession shall be handled and treated as trust funds, and shall without deduction or allowance be remitted to said trustee to be prorated to companies and applied on the deficit reflected by this contract. After satisfying all accounts due insurance companies in the agency any balance in cash, notes, bills and accounts receivable remaining in the hands of the party of the second part of the trustee shall be turned back to the said T. R. Harris.

"'3. The said companies agree to continue their agency in the hands of the said W. Rudy Moore subject to all the terms and conditions of their agency agreements and commissions of authority and subject always to termination by any individual company at any time at its discretion.

" '4. All premiums collected by the agent on policies issued by the agency, and all other funds of any kind or nature which may come into his hands or possession as agent of the said companies shall be handled and treated as trust funds, and all of such funds shall be remitted, less the usual commissions, direct to the various companies promptly on the fifteenth day of the second month following the date of inception of the policies, the said party of the second part also agrees to collect the premiums on all policies issued during the term of this agreement within thirty days from the close of the month in which the policies take effect, or in lieu thereof to cancel and return such policies.

" '5. Until such a time as the total purchase price of this agency shall have been liquidated in full, the party of the second part agrees that he will not directly or indirectly represent or place business with any other company, general agent or agents on a brokerage basis or otherwise without the consent of the said trustee.

" '6. The companies and general agents herein referred to are as follows: Continental Insurance Co., Cunningham and Newal, General Agents, Gross R. Scruggs, General Agents and the Girard Fire & Marine Ins. Co.

" 'Witness our hand and seals, this the 30th day of July, 1932.

" 'Wm. R. Nentwig, Trustee
" 'W. Rudy Moore.' "

On November 18, 1932, the appellant, Continental Insurance Company, filed suit against the appellee, T. R. Harris, and sureties on his bond, in the justice of the peace court, for $143.22. The case was tried on May 17, 1933, and a judgment rendered in favor of Harris. The Continental Insurance Company prosecuted an appeal to the circuit court.

On March 31, 1934, the appellant, Gross R. Scruggs & Company, filed suit in the justice court against Harris and the sureties on his bond for $245.50. On April 23d this case was tried in justice court, and a verdict and judgment rendered for appellees, and an appeal was prosecuted to the circuit court in this case.

In the circuit court, appellees filed demurrer, answer and affidavit of denial of accounts. The cases were consolidated and tried together, and a verdict and judgment rendered for appellees in both cases. There was a motion for new trial filed by each of the parties, each of which was overruled, and the cases are here on appeal.

There was some evidence taken in addition to the instruments introduced. Harris, the appellee, testified that he was formerly the agent of the insurance companies and executed the assignment which has been introduced in evidence; that he assigned his business to the companies for the balance he owed them; the assignment and sale were made to Nentwig; that he did not at the present time owe the Continental Insurance Company or Gross R. Scruggs Company anything; the insurance companies took over the business for what he owed them; that it was worth, at the time $1,500; he delivered policies to Rudy Moore at the direction of the insurance companies.

L. E. Walker testified for appellants that he was State agent for Gross R. Scruggs & Company. He testified he was not present and no other person was present at the time of the assignment representing Scruggs.

E. A. Corley testified for the appellants that he lived in Dallas, Texas, and was bookkeeper and chief accountant for Gross R. Scruggs & Company; testified that the company had business dealings with T. R. Harris.

R. S. Graham testified he was employed by Scruggs & Company; that Scruggs & Company had knowledge of the transaction in an indirect way; that Scruggs & Company had entered into no agreement by which Moore was to assume the indebtedness of Harris, and it was not a party to any such transaction. This witness also testified that Harris still owed Scruggs & Company.

Rogers, of Dallas, Texas, also testified that he was the head bookkeeper of the Continental Insurance Company with a branch office in the Santa Fe Building at Dallas; he had held this position for the last six years; that he had full knowledge of the account of T. R. Harris by reason of his position as bookkeeper, because all the records of the Continental Insurance Company, includ-

ing the records of account, are kept under his supervision; that there had been no agreement between Harris and the Continental Insurance Company regarding the account since July 30, 1932; that Harris now owed the company $345.60 with interest; the records do not show any further credits to Harris.

Wm. R. Nentwig testified that he resided at Dallas, and that his present official position with the Continental Insurance Company is that of examiner; that he is an underwriter, and in 1932 and a portion of 1933 he was special agent; that as special agent he was responsible for collection the balances due the company from Harris' Agency; that he had knowledge of the assignment.

T. R. Harris testified in rebuttal that he assigned his business to Nentwig and that all the insurance companies had representatives present when the assignment was made.

Mr. Rudy Moore testified that he bought the Harris Agency from Nentwig, the special agent of the Continental Company, and made payments on the purchase price. This evidence is not disputed.

It is contended, however, that the instruments introduced in evidence do not indicate a sale in satisfaction of Harris' indebtedness, and do not indicate that Nentwig or Moore were substituted for Harris. It is true that the instruments introduced used the word "liquidated" instead of "pay." "Liquidate" means to determine by agreement or litigation the amount of indebtedness, to make the amount clear and certain, but it also means to discharge, to pay off, as an indebtedness. Webster's New International Dictionary.

In these instruments, it is clear that the word liquidate was used in the sense of paying off, settling. There was no dispute about the amount, and the assignment and bill of sale were evidently made for the purpose of paying off Harris' indebtedness. The evidence shows that all of the insurance companies were represented and there is no contention in this case that they did not have authority to act for their companies. They took the assignment from Harris, according to the evidence, all of them agreeing to it, made Nentwig the trustee, gave him

authority to sell it if he wished to do so, and he did at the same time sell the agency to Moore, and Moore made payments. The record does not show whether he paid all that was due the insurance companies or only a portion of it; but the evidence does show that Nentwig received payments from Moore.

Appellant calls attention to assignments for the benefit of creditors and cases on this question. They have no application here. This was a sale, and all the parties treated it as a sale. The instruments introduced in evidence were executed at the same time, and parts of one transaction. When instruments use any term that is ambiguous, as the word "liquidate" in this case, it will be construed to mean what the conduct and actions of the parties manifestly intended it to mean. There can be no doubt that Harris sold his agency which was worth $1,500 according to the undisputed proof; that this included not only the agency but all the accounts and notes due the agency, and renewals on policies and payments on policies. It also included the good will of Harris, and the contract provided that he should not enter the insurance business in Franklin County for five years. Where, from the terms of the contract or the language employed, a question of doubtful construction arises, and where it appears that the parties themselves have practically interpreted their contract, courts will generally follow that practical construction.

"It is to be assumed that parties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to protect his own interests and to insist on his rights, and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it should be. Parties are far less liable to have been mistaken as to the meaning of their contract during the period while harmonious and practical construction reflects that intention, than they are when subsequent differences have impelled them to resort to law, and one of them seeks a construction at variance with the practical construction they have placed upon it of what was intended by its

provisions. It has been said that the practical construction of the ambiguous terms of a contract will be adopted, although the language used may more strongly suggest another construction." 6 R. C. L. 853.

The conduct of the parties in this case conclusively shows that this was a sale of the entire agency, including debts due it, together with good will, and no one disputes that.

It is contended by the appellant that the instructions were inherently erroneous. No objection was made to the instructions except a general objection; there were no specific objections. The court instructed the jury in effect that they would find for the appellants unless they found that there was a sale by the appellee to the appellants of a certain insurance agency, and that the appellants purchased that agency in full satisfaction of the debt. The other instructions told them practically the same thing, and, as we have already said, no objection is pointed out to the instructions, and they are not inherently erroneous.

We find no error, and the judgment is affirmed.