## KINARD v. MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N OF OMAHA, NEB.

### Clv. A. No. 562.

United States District Court
W. D. Arkansas, El Dorado Division.

Dec. 9, 1952.

Bernard Whetstone, El Dorado, Ark., for plaintiff.

Walter L. Brown, El Dorado, Ark., for defendant.

JOHN E. MILLER, District Judge.

Formal findings of fact and conclusions of law, separately stated, have been filed herein.

The plaintiff, Kenneth Kinard, is seeking to recover from the defendant, Mutual Benefit Health and Accident Association of Omaha, Nebraska, benefits in the sum of $200 per month from November 29, 1950, to the date of the filing of the complaint, April 2, 1952. However, at the trial it was stipulated by the parties that if the plaintiff is entitled to recover, judgment should be entered for the amount found due at the date of the trial, October 29, 1952.

The suit is based upon a policy of insurance No. 204A 191723–47M, dated May 9, 1947.

The material facts, as shown by the testimony and set forth in the findings of fact, are not in dispute, but the parties are in disagreement as to the rules of law that should be applied to the facts. Only such facts as are necessary to a clear understanding of the contentions of the respective parties will be referred to hereinafter.

The plaintiff contends:

(1) That following the date of the occurrence of the accident, June 29, 1949, in which he was injured, and after the submission of proof of the accident and the injury, a settlement was entered into between him and the defendant under the terms of which the defendant began paying him monthly benefits of $200 per month under part C of the policy, and that the said payments continued from the date of the accident to November 29, 1950, when the defendant wrongfully ceased to make such payments.

(2) That even though the Court should hold that a new contract had not been entered into by the parties, nevertheless, defendant, by making such payments with full knowledge of all the facts, waived any defenses it might have to plaintiff's claim.

(3) That in any event, under the provisions of the policy he is entitled to recover under part C the sum of $200 per month until his 60th birthday, and $100 per month thereafter.

(4) That the injuries received by him were within the provisions of the policy and were not "received as a result of or while participating in aeronautics or air travel."

The defendant contends:

(1) That there was no independent contract entered into by the parties following the occurrence of the accident in which plaintiff was injured, and that by making the payments of $200 per month from the date of the accident, June 29, 1949, to

November 29, 1950, it did not waive any of the provisions of the policy, and that the extent of its liability under the provisions of the policy is $1,500. That it has paid the plaintiff far in excess of the said sum of $1,500 and is entitled to recover from plaintiff the difference between the amount paid him and the said sum of $1500.

(2) That the injuries of plaintiff were received while participating in aeronautics or air travel and as a result thereof, and that under the provisions of the policy the defendant is not liable to the plaintiff in any amount for such injuries.

■ Neither party has made any contention that the law of any state other than Arkansas applies, and both parties have cited and relied largely upon Arkansas decisions in their respective briefs. Although the testimony was not entirely clear upon the point, a fair inference from the testimony is that the contract was completed by a delivery of the policy by Mr. White, the representative of the defendant, to the plaintiff in El Dorado, Arkansas. Assuming that the policy was thus completed in Arkansas, then Arkansas law governs the rights of the parties herein. John Hancock Mut. Life Ins. Co. of Boston, Mass. v. Munn, 8 Cir., 188 F.2d 1, 3.

■ In considering the contentions of the parties it should be borne in mind that when the language of the policy is clear and unambiguous the policy should be construed as any other contract and the language should be given its natural meaning, i. e., the interpretation which an ordinary person would place upon it. Life & Casualty Ins. Co. of Tennessee v. De Arman, 192 Ark. 11, 90 S.W.2d 206; Hearin v. Standard Life Ins. Co., D.C. E.D.Ark., 8 F.2d 202. Moreover, the policy should be considered and construed as a whole. National Life Ins. Co. v. Gregg, 168 Ark. 80, 269 S.W. 62; Hearin v. Standard Life Ins. Co., supra. But, if the policy is ambiguous and susceptible to more than one reasonable construction, the law is well settled that the construction most favorable to the insured should be adopted. Martin v. Mutual Life Ins. Co. of N. Y., 189 Ark. 291, 71 S.W.2d 694; Travelers' Protective Association of America v. Stephens, 185 Ark. 660, 49 S.W.2d 364; American Standard Life Ins. Co. v. Meier, Ark., 246 S.W.2d 128. The reason for the rule is stated in Travelers' Protective Assoc. of America v. Stephens, supra, on page 665 of 185 Ark., on page 366 of 49 S.W.2d, as follows:

"Where the provisions of a policy of indemnity are reasonably susceptible of two constructions consistent with the object and purpose of the contract, one favorable to the insurer and the other to the insured, that will be adopted which is favorable to the insured. It has been the settled policy of this court since the beginning of its construction of contracts of insurance to hold that the policy should be liberally construed so as not to defeat, without necessity, the claim for indemnity. The reason is that such policies are written on printed forms prepared by experts employed by the insurance companies for that purpose, and the insured has no voice in the matter. Hence, it is fair and reasonable that, where * * * susceptible of two constructions, that which will sustain the claim and cover the loss should be adopted."

The parties, while agreeing that the rule of construction is as above stated, do not agree as to whether the terms and language used in the policy involved herein are ambiguous. However, in considering and deciding the issues presented in the case, the Court has examined and studied the policy with the above principles in mind.

Plaintiff's first contention is that a settlement or adjustment contract was entered into by the parties. However, adjustment contracts must meet the requirements applicable to contracts generally, and in the instant case the plaintiff offered no proof of any agreement between the parties, nor did he allege or prove any consideration for such a contract. There is no evidence from which the Court could find the existence of a valid contract of settlement or adjustment intended by the par-

ties to supersede the contract as evidenced by the policy, and plaintiff's first contention is without merit.

Plaintiff's second contention is based upon the following facts:

On June 29, 1949, plaintiff was struck by an airplane propeller and received serious injuries, including the loss of one eye. Thereafter, plaintiff made a full disclosure to the defendant of the exact manner in which the accident occurred and the extent of the injuries which he had sustained. With full knowledge of all the facts, defendant began paying plaintiff $200 per month under part C of the policy and continued such payments for 18 months. Further, the defendant, with full knowledge of all the facts, accepted and retained the payment of the annual premium of $104 that was due under the terms of the policy on June 1, 1950.

Plaintiff argues that in view of these facts, the defendant has waived any defenses which it might have under the terms of the policy. Specifically, plaintiff argues that the defendant has waived any defense based upon the aeronautics exclusionary clause of the policy, or any defense based upon the exclusiveness of the provision allowing recovery for the loss of an eye only. However, in the argument the plaintiff fails to differentiate between waiver of a forfeiture or waiver of certain provisions of the policy, which may be allowed, and extension of the coverage of a policy, which may not be allowed. While it is true that the insurer may waive a forfeiture, it is equally true that waiver or estoppel may not be successfully urged as a method of bringing within the terms of a policy risks expressly excluded therefrom, or as a means of extending the coverage of a policy. In Metropolitan Life Ins. Co. v. Stagg, 215 Ark. 456, 221 S.W.2d 29, the Court, in holding that the Insurance Company, by accepting premiums, through its general agent, who had knowledge of the fact that the insured was in the military service, did not waive the exemption clause in the policy relieving the company from liability for death while in the military service, said, at page 459 of 215 Ark., at page 31 of 221 S.W.2d:

"Conceding without deciding that Ament was a general agent, possessing all authority of a general agent, and that the law in regard to a waiver is as appellee contends, the question remains whether the waiver doctrine is applicable here. We think it is not, as the controlling question is whether the death of insured under the undisputed testimony was a risk against which the insurance had been written. The insurer may unquestionably through the knowledge of its authorized agent, waive provisions of a policy which, if not waived, would defeat a recovery thereon, when with such knowledge, the insurer receives premiums to continue the policy in force, but it is not the law that through waiver a new policy can be substituted insuring against risks expressly excluded in the original policy. * * *

"In the chapter on Insurance, 29 Am.Jur. Sec. 903, page 690, it is said: 'The doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom; and the application of the doctrine in this respect is, therefore, to be distinguished from the waiver of, or estoppel to deny, grounds of forfeiture.'"

And, in American Casualty Co. v. Harrison, D.C.W.D.Ark., 96 F.Supp. 537, at page 550, this Court, in discussing the Arkansas law with regard to waiver and estoppel, said:

"And, as to the contention of waiver and estoppel, it is settled in Arkansas that waiver and estoppel are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom. This rule is to be distinguished from the rule that permits the assertion of waiver or estoppel to deny grounds of forfeiture. Metropolitan Life In-

surance Co. v. Stagg, 215 Ark. 456, 221 S.W.2d 29; Standard Acc. Ins. Co. v. Roberts, 8 Cir., 132 F.2d 794."

See also, Miller v. Illinois Bankers' Life Association, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378; Washington National Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854.

Applying the law as above stated to the facts in the instant case, the only question is whether the alleged defenses relate to forfeitures or to extension of the terms of the policy.

The first defense is that under the facts the most that the defendant can be held liable for is $1,500 for the loss of an eye under part A of the policy, and that this amount is "in lieu of all other indemnity." Assuming, for present purposes, that this is a valid defense, it would be an extension of the coverage of the policy to hold that defendant has waived this defense and that plaintiff may recover under part C of the policy in disregard of the provisions of part A, merely because the defendant paid him under part C for eighteen months and did not, during that time, insist that its sole liability was that provided in part A.

The second defense is that plaintiff's injuries were received "as a result of or while participating in aeronautics or air travel." Assuming, also, that this is a valid defense, it would likewise bring withing the coverage of the policy risks expressly excluded therefrom to hold that defendant has waived this defense and that plaintiff's injuries were within the coverage of the policy.

Therefore, the doctrines of waiver and estoppel are not available to aid the plaintiff.

Plaintiff's third contention is that he is entitled to recover, under the provisions of the policy and particularly under part C thereof, $200 per month until his 60th birthday and $100 per month thereafter. In reply to this contention, defendant argues that it is liable to the plaintiff in the sum of $1,500 for the loss of an eye, and that this amount is the total extent of its liability. To find the answer to these contentions, we must look to the provisions of the policy involved herein.

Under the "Accident Indemnities" provision, the policy provides:

"The loss of eye or eyes shall mean the total and irrecoverable loss of the entire sight thereof. Only one of the amounts (the largest applicable thereto) named in Parts A and B will be paid for injuries resulting from one accident and shall be in lieu of all other indemnity except for that provided in Part I."

Under "Specific Losses," part A of the policy provides:

"If such injuries shall continuously and wholly disable the Insured from the date of the accident and, independently of sickness and all other causes, result in any of the following specific losses within three months and while the Insured is so disabled, the Association will pay for loss of * * *. Either Eye, $1,500.00."

Part C of the policy provides:

"If the Insured, because of such injuries which do not result in any of the above-mentioned specific losses, shall be wholly and continuously disabled and under the professional care and attendance, at least once a week, of a legally qualified physician, other than himself, the Association will pay indemnity for one day or more (benefits begin with the first medical treatment during disability) at the rate of Two Hundred ($200.00) Dollars per month until the Insured's sixtieth birthday and at the rate of One Hundred ($100.00) Dollars per month thereafter so long as the Insured lives and suffers total loss of time."

It is undisputed that plaintiff's injuries, exclusive of and independently of the loss of an eye, are presently such as to wholly and continuously disable him; that such disability has existed since the date of the accident; and that he is now and has been since the date of the accident under the professional care and attendance, at least once a week, of a legally

qualified physician, other than himself. Thus plaintiff is entitled to recover under part C of the policy unless the recovery under part A is exclusive. :

Defendant argues that since recovery for the loss of an eye *"shall be in lieu of all other indemnity* except for that provided in Part I" (It is admitted that part I is not applicable in the instant case), plaintiff cannot recover under part C; that this is true because part C begins with the following language: "If the Insured, *because of such injuries which do not result in any of the above-mentioned specific losses,* shall be wholly and continuously disabled * * *"; that to strike the above-underlined clauses from the policy would be to write a new contract for the parties; and that these provisions of the policy are clear and unambiguous.

In support of its contentions the defendant cites such cases as National Life Ins. Co. of U. S. A. v. Jackson, 161 Ark. 597, 256 S.W. 378; Monongahela Ins. Co. v. Batson, 111 Ark. 167, 163 S.W. 510; Southern Surety Co. v. Penzel, 164 Ark. 365, 261 S.W. 920. The import of these decisions is that an insurance policy must be interpreted according to its plain language when there is no ambiguity in it, and courts cannot, by interpretation, engraft upon insurance contracts a meaning which is contrary to the plain terms thereof.

Although no case, involving a policy with the same provisions as the policy in the instant case, has been cited by either plaintiff or defendant to the Court, the determination of the intended meaning of the policy is aided by an examination of the following cases involving similar, though not identical, provisions.

In Anderson v. Aetna Life Ins. Co., 75 N.H. 375, 74 A. 1051, 28 L.R.A.,N.S., 730, the Court at page 1053 of 74 A. said;

"The general purpose of the contract under consideration was therefore to indemnify the insured for loss resulting from accidental personal injury. With such end in view it would be natural to expect that the greater the loss, the larger would be the sum payable as indemnity. * * * The contention is that an increase in the plaintiff's loss diminished the indemnity (called 'benefit' in the policy) which the plaintiff was entitled to receive. There is no element of insurance in such a contract."

In Smith v. Mutual Life Ins. Co. of N. Y., 188 Ark. 1111, 69 S.W.2d 874, the Court at page 1115 of 188 Ark., at page 876 of 69 S.W.2d said:

"It is self-evident that the paramount consideration the parties had in mind at the execution of this contract was insurance against total and permanent disability. Any construction which nullifies this paramount consideration should be avoided, if possible. All courts agree that it is a fundamental rule of construction that insurance contracts when ambiguous should be construed most strongly against the insurer."

In Mutual Benefit Health & Accident Ass'n v. Ryder, 166 Va. 446, 185 S.E. 894, the Court at page 898 of 185 S.E., said:

"One cannot in the same policy for one accident promise to pay a certain sum and then reduce it by another method of calculation which may and does in the instant case reduce it to practically nothing."

In Rabb v. North American Accident Ins. Co., 28 Idaho 321, 154 P. 493, the policy provided as follows:

"(b) If any one of the following specific total losses, shall result solely from injuries described in paragraph (a), within 90 days from date of accident, the company will pay, in lieu of any other indemnity: For loss of: * * *. Entire sight of one eye, if irrecoverably lost, one-third of the principal sum. * * *

"(c) For total loss of time resulting necessarily and solely from injury as described in paragraph (a) an accident indemnity of $40 per month or at that rate for proportionate part of a month, shall be paid to the insured for such period of continuous loss of time for a period not exceeding 24 months."

The Court at page 495 of 154 P. said:

"The death benefit, or principal sum named in the policy, is $100, and appellant contends it reserved the right, in case the insured should lose the sight of one of his eyes through external, violent, and purely accidental means, to pay one-third of the principal sum, or $33.34, in lieu of any other indemnity."

After quoting part (b) of the policy above set forth, the Court said:

"* * * it appears to us that the construction most favorable to appellant of which that language is capable is that it limits the liability which will arise from an accidental injury which results in the loss of one of the eyes of insured to one-third of $100, and that no additional indemnity can be successfully claimed by reason of that injury. Certainly it cannot be construed to limit the liability which may arise by reason of other injuries than that which caused the loss of the eye, although such other injuries may have been received in the same accident.

"In this case it appears that one of respondent's injuries caused the loss of his eye, which was but one of the results of his accident. Another result of the same accident was the fracture of his leg, which last-mentioned injury caused the total loss of time provided for in paragraph (c) of the policy * * *.

"Had the loss of his eye been the only injury which respondent suffered appellant's contention would be sound, but he is not precluded from recovering the benefits provided for in paragraph (c) of the policy which are claimed by reason of loss of time due to another injury than that to his eye, although both injuries resulted from one accident."

In Kangas v. Standard Acc. Ins. Co., 138 Minn. 418, 165 N.W. 268, 269, L.R.A. 1918B, 504, the policy provided:

"Part II * * *. If any one of the following specific losses shall result necessarily and solely from such injury as heretofore described, within ninety days from the date of the accident, indemnity will be paid as follows: * * *. (b) For loss of both hands * * * The principal sum * * *. Not more than one of the indemnities provided in this part II will be paid on account of loss resulting from any one accident. The occurrence of any loss for which indemnity is payable under this part shall at once terminate this insurance.

"Part III.—Monthly Accident Indemnity.

"Indemnity under this part shall not be paid for any disability resulting from loss for which provision is made in part II. * * *"

The Court at page 270 of 165 N.W. said:

"It is also argued that indemnity under part III should not be paid for any disability resulting from loss for which provision is made in part II. The difficulty with this contention is that in the case at bar the loss is the entire left arm and the fingers of the right hand, and we fail to discover, under the head of specific losses, any reference to such a loss. We do, however, find provision for indemnity for total disability * * *.

"Suppose, instead of losing the fingers of his right hand, respondent had, in addition to the loss of his left arm, sustained an injury to his spine which produced an immediate and total paralysis of the lower part of his body and destroyed the use of both feet. An accident policy which would not, in such a case, afford indemnity for the whole loss would be a delusion and a snare. We hold that the injury and loss of the insured entitle him to indemnity under paragraph (a) of part III of the policy."

See also, Federal Life Ins. Co. v. Phillips, 195 Ark. 88, 111 S.W.2d 536, 115 A.L.R. 1214.

As heretofore stated, the cases hereinabove quoted from did not construe provisions identical with those in the in-

stant case, but the reasoning in those cases is persuasive.

In the instant case, as in Anderson v. Aetna Life Ins. Co., supra, throughout the policy the amount of recovery is determined by the severity of the injury; the greater the injury, the larger the recovery. Here, plaintiff received a brain injury which wholly and continuously disabled him, independently of the loss of one eye. ·But defendant asserts that since plaintiff lost an eye in the same accident his recovery is limited to the lesser sum for the loss of the eye. Before the Court would be justified in reaching such a conclusion, the intention of the parties as expressed in the policy would have to clearly appear.

The Court feels that the most logical construction of the policy, especially in view of the very purpose of indemnity insurance, is as follows:

The provision in the policy that recovery for the loss of an eye (or other specific losses) "shall be in lieu of all other indemnity," means that the indemnity thus provided is the only amount which can be recovered for disability resulting from the loss of one eye. This provision is not a limitation of recovery for other wholly and continuously disabling injuries to other parts of the body, although received in the accident.

The provision in part C that "If the Insured, because of such injuries which do not result in any of the above-mentioned specific losses, shall be wholly and continuously disabled * * *" is merely intended to prevent a double recovery for the same injury. In other words, if a person is entitled to and recovers for a specific loss, he cannot also recover under part C for the same loss. That is, if plaintiff's only injury had been the loss of an eye and such injury had wholly and continuously disabled him, then· defendant's contention that recovery under part A is exclusive might be sound. But in the instant case, the injury which wholly and continuously disabled plaintiff was the brain injury, and the brain injury was not one which resulted "in

any of the above-mentioned specific losses" within the meaning of the provisions of part C above referred to. Thus, the mere fact that plaintiff also lost an eye in the same accident does not prevent his recovery under part ·C.

Even if defendant's contention was sound, i. e., recovery under part A should exclude recovery under part C, it seems that defendant's cause would not be aided, because under the terms of the policy plaintiff apparently was not entitled to recover under part A. Part A provides:

"If such injuries *shall continuously and wholly disable the Insured from the date of the accident and, independently of sickness and all other causes,* result in any of the· following specific losses within three months and while the Insured is so disabled, the Association will pay for loss of: * * * Either Eye $1,500.00."

A literal interpretation of this provision would seem to be that the Insured could recover for the loss of an eye only if such loss continuously and wholly disabled him, independently of all other causes. In the instant case, the mere loss of an eye certainly would not have wholly disabled the plaintiff, who was a lawyer. It is common knowledge that there are many able-bodied and competent men successfully engaged in various occupations and professions who have suffered the loss of an eye. And in the instant case, the undisputed medical testimony is that the injury which disabled plaintiff was the brain injury and that the loss of an eye in no wise caused or contributed to such whole and continuous disability.

The most that can be said for defendant's position is that the construction it seeks to place upon the provisions of the policy is a possible interpretation thereof. But, as heretofore stated, the Court feels that a more logical interpretation of the policy and one that is consistent with the intention of the parties as evidenced by the terms thereof and the actions of the parties, is that plaintiff is entitled to

recover under part C. Here, defendant, with full knowledge of all the facts pertaining to plaintiff's injuries and the extent thereof, began paying plaintiff $200 per month under part C of the policy and continued such payments for 18 months. This indicates that the parties themselves construed the insurance contract and decided that plaintiff was entitled to such recovery. And, as stated by the Court in Beasley v. Boren, 210 Ark. 608, 612, 197 S.W.2d 287, 289, "The parties to a contract may, by their mutual actions in carrying it out, furnish an index to its meaning, which the language thereof fails to do." See also, Continental Ins. Co. v. Harris, 190 Ark. 1110, 82 S.W.2d 841. In any event, since there are two possible interpretations to be placed upon the policy, the one favoring the insured should be adopted. Travelers Protective Association of America v. Stephens, supra; Smith v. Mutual Life Ins. Co. of N. Y., supra.

The remaining contention of plaintiff is that he is not precluded from recovering benefits under the policy by reason of the aeronautics exclusionary clause. The facts, with respect to the accident, are as follows:

Plaintiff had been taking flight training as a student under the G. I. Bill of Rights. His training was taken under the supervision of W. L. Carson, Manager of the United Air Service, Inc., at El Dorado, Arkansas, and plaintiff had received a private pilot certificate. On June 29, 1949, plaintiff's family was visiting in Forrest City, Arkansas, and plaintiff desired to go there by plane and return to El Dorado with his family by automobile. Plaintiff contacted B. J. Cabaniss, a flight instructor of the United Air Service, Inc., and they arranged to make the trip. The instructor took the plane up at El Dorado and landed it at Forrest City, but the plaintiff piloted the plane during a part of the trip. Upon landing at the Forrest City Airport, both men left the plane and spent about ten minutes looking for someone to sell the instructor some fuel so he could fly the plane back to El Dorado. They were unable to obtain fuel, and Mr. Cabaniss decided he could fly to

Brinkley, Arkansas, and there obtain fuel for the remainder of the return trip to El Dorado. When Mr. Cabaniss prepared to leave, plaintiff re-entered the left seat of the plane in order to hold the brakes while Cabaniss cranked the plane by twirling the propeller. After that was done, Cabaniss returned to the cab of the plane, and plaintiff vacated the cab by going out of the left door as the instructor entered the cab. The plaintiff left the plane along the trailing edge of the left wing. Cabaniss heard the propeller hit something and discovered that the plaintiff had been struck by the propeller and knocked back under the plane near the landing gear. The injuries plaintiff suffered as a result of being struck by the propeller are the injuries for which he claims benefits under the policy.

The airport at El Dorado and the airport at Forrest City were both definitely established airports. Mr. Cabaniss was a licensed transport pilot and the plane used by plaintiff was a licensed passenger airplane provided by an incorporated common carrier of passengers. The cost of the trip was part of plaintiff's training and would have been paid by the government, but for the accident. The United Air Service, Inc. did not fly a regular passenger route between El Dorado and Forrest City, and, in fact, it merely conducted air taxi operations with the official government designation of non-scheduled flying.

The defendant contends that by reason of the above facts, plaintiff is not entitled to recover any benefits under the policy.

The policy provides that it shall not cover injuries received "as a result of or while participating in aeronautics or air travel except as provided in Part H. * * *"

Part H provides as follows:

"This policy covers such injuries, caused by any of the hazards of aviation or aeronautics, only if received while the Insured is riding as a fare-paying passenger in a licensed passenger airplane provided by an incorporated common carrier of passengers

and while operated by a licensed transport pilot upon a regular passenger route between definitely established airports."

At the outset of the consideration of this contention of the parties it should be noted that the provision "as a result of or while participating in aeronautics or air travel" is the exclusionary clause of the policy, and part H merely provides an exception to the exclusionary clause under certain conditions.

Plaintiff contends that his injuries were received in such a manner as to come within the exceptions contained in part H of the policy. It is true, as heretofore stated, that plaintiff was in a licensed passenger airplane provided by an incorporated common carrier of passengers and operated by a licensed transport pilot. It is also true that the airports at El Dorado and Forrest City were definitely established airports. However, the plane was not being operated upon a regular passenger route, and plaintiff was not a fare-paying passenger within the meaning of the exception. Furthermore, since plaintiff actually piloted the plane on most of the trip, he was probably not a passenger within the meaning of the policy. Thus, plaintiff clearly does not come within the exception provided in part H. Therefore, the question for determination is whether plaintiff's injury, which he received by walking into the propeller after he had safely alighted from the plane, was received "as a result of or while participating in aeronautics or air travel."

Both defendant and plaintiff cite the case of Martin v. Mutual Life Ins. Co. of N. Y., 189 Ark. 291, 71 S.W.2d 694, as being in their favor. Defendant asserts that the case indicates that plaintiff was "participating" in aeronautics, while plaintiff contends that under the reasoning of the case plaintiff would not have been participating in aeronautics or air travel even if he had been injured while actually receiving instruction from his instructor on a bona-fide training flight. In the course of the opinion, the Court at page 294 of 189 Ark., at page 696 of 71 S.W.2d, said:

"* * * the phrase 'participate in aviation' would connote an active share in its management; as, where a person would actually pilot a plane himself * * *."

This language, as to piloting, is merely dictum since the insured was an invited guest riding in the plane and had no part in operating or piloting the plane. Nevertheless, the language indicates that under Arkansas law a person piloting a plane is participating in aviation or aeronautics. Thus, plaintiff was participating in aeronautics or air travel while he was piloting the plane, but the specific question is, was he so participating at the time he was injured, or were his injuries a result of such participation?

Apparently the Arkansas Supreme Court has not passed upon the identical question herein involved, and the Court may look to the law in other jurisdictions as an aid in determining what the Arkansas Supreme Court would hold under the facts presented.

While there are a multitude of cases involving various aeronautical exclusionary clauses in insurance policies, the Court has found only three cases in which the facts were substantially the same as the facts in the instant case insofar as the type of accident is concerned.

In Tierney v. Occidental Life Ins. Co. of California, 89 Cal.App. 779, 265 P. 400, the Court construed the phrase "This policy does not cover any injury, fatal or nonfatal, sustained by the insured while participating or in consequence of having participated in aeronautics." In that case the Insured had ridden in an airplane as a passenger, and after the plane had landed he "stepped out onto the left wing of the plane and onto the ground, then forward, bent over to avoid a drift wire, and as he straightened up was struck by the propeller * * *."

The Court at page 401 of 265 P., said:

"The most approved definition of the word 'aeronautics' is that it is 'the art of navigating the air.' Ency.Brit.,

(11th Ed.) p. 260; Bew v. Travelers' Ins. Co., 95 N.J.L. 533, 112 A. 859, 14 A.L.R. 983. The authorities support the assertion in respondent's brief that, 'when the machine clears the earth and returns successfully to the earth, and is resting securely upon the ground, the 'aeronautics'—the flight—is completed, and the aeronautics is at an end.' It does not seem necessary to further consider appellant's first specification. The evidence does sustain the finding that the death was not caused while the insured was 'participating in aeronautics.' "

The Court further stated:

"The next question presents apparent rather than real difficulties: Was the death caused 'in consequence of insured's having participated in aeronautics'? * * * The Standard Dictionary defines 'in consequence of' as meaning 'as a result of; because of.' * * * The question presented is: Did the accident happen *as the result of or because of* that which is now past, 'having participated in aeronautics'? Did the participation cause the death?

"The insured might have met a similar death had he climbed into the cockpit just from curiosity after the plane had landed, in which case he would not have participated in aeronautics at all. Upon the completion of the flying and as deceased was climbing from the plane he might have been shot by the accidental discharge of a revolver in the hands of one of the officers to whom he was introduced. To be sure, the doctrine of chances would put deceased somewhere else. Had he not flown to Riverside county he probably would not have been there to climb into the machine or out of it; but by reason of this improbability can it be argued that, because he was there by flight, that the flight caused the accident? The question answers itself: The flight was not the proximate cause, but there was the intervening act of the deceased in his poor judgment in so conducting himself

after climbing out of the machine as to be struck by the propeller. * * *

" * * * The decision in this case does not rest upon the principles of damage recovery. In fact we see nothing obstruse or difficult about it. At first blush, the flight and the accident being so close together, one is apt to confuse the meaning of *sequence* and *in consequence*. One is apt to broaden the word 'aeronautics' to include everything concerning and surrounding an airplane and a flight. But the uncertainty clears completely when 'aeronautics' is understood to mean only the flight and 'in consequence' to mean the cause of a happening.

"Appellant in effect asks us to rule that the exemption in the policy goes to a death or injury from any of the intermediary steps taken by an insured from the time he contacts the immediate vicinity of an aeroplane before flight until he loses such contact after the flight. Herein is confused a public passenger carrier's duty with the exemption in the insurance policy, but the language used does not accomplish what appellant contends it does—although it would have been easy to have written it so had the company desired."

In Pittman v. Lamar Life Ins. Co., 5 Cir., 17 F.2d 370, the following clause was construed by the Court:

"If the insured shall die within two years from date of issue of this policy, while participating or as a result of participation in any submarine or *aeronautic expedition or acitivity, either as a passenger or otherwise*, the liability of the company under this policy shall be limited to the cash premiums paid hereon and no more."

The insured had ridden as a passenger in a plane which he owned in partnership with the pilot. After landing the plane, the pilot discovered that he could not cut the motor off because of a missing pin. While the pilot went to get a dollie to put under the plane and taxi it to the hanger, the insured "got out of the cock-

pit on the left side and walked towards the left wing of the ship, looking at the ship as he walked slowly, and, very soon after he was seen near the end of that wing, he was struck by the tip on the end of the propeller and killed."

The Court on page 370 of 17 F.2d said:

"The language used requires the conclusion that, though the trip or aeronautic expedition in which the insured had been taking part ended prior to his death, the insurer's liability was limited to the cash premium paid, if the insured's death occurred while he was participating in an aeronautic activity. The term *'aeronautic activity'* is broad enough to cover what is ordinarily incident to an airplane trip. The aeronautic activities of one who takes such a trip do not begin or end with the actual flight, but include his presence or movements in or near to the machine incidental to beginning or concluding the trip. The quoted provision shows that the insurer did not consent to insure against the hazards incidental to an airplane trip. The insured incurred those hazards, and his death resulted from his remaining exposed to one of them. We are of opinion that his presence at the place where he was killed was so immediately connected with and incidental to the airplane trip he took as to require the conclusion that his death occurred while he was participating in an aeronautic *activity*."

As hereinbefore stated, the facts, insofar as the type of accident is concerned, in Tierney v. Occidental Life Ins. Co. of California, and Pittman v. Lamar Life Ins. Co., supra, are substantially the same as the facts in the instant case. However, only the Tierney case involved an aeronautics clause substantially similar to the one in the case at bar. The Pittman case construed the term "aeronautic activity" to include such an injury, while the Tierney case construed the clause "in consequence of having participated in aeronautics" not to include such an injury. The reasoning in the Tierney case applies equally well to the instant case, while the

Pittman case can be of little value because of the difference between the clause which the Court construed in that case and the clause herein involved.

The third case involving a similar accident, Murphy v. Union Indemnity Co., 172 La. 383, 134 So. 256, 257, is also of very little help. The clause in that case provided:

" 'Insurance does not cover * * * .njuries * * * sustained * * * while in or on any vehicle or mechanical device for aerial navigation, or on falling therefrom or therewith, or while operating or handling any such vehicle or device.' "

In that case the insured stepped on the wing of a seaplane to get aboard and in so doing stepped into the propeller. In view of the broad langauge of the clause, it is quite natural that the Court held that the insured came within the clause and that no recovery could be had under the policy.

The Court feels that the Arkansas Supreme Court would follow the Tierney case if it had the occasion to pass upon the point.

In The Equitable Life Assurance Society of the United States v. Dyess, 194 Ark. 1023, 109 S.W.2d 1263, the Court held that the clause "engaging as a passenger or otherwise in * * * aeronautic expeditions or operations * * *" did not apply to a person merely riding as a passenger. The Court at page 1027 of 194 Ark., at page 1265 of 109 S.W.2d, said:

"The question is, Was he engaged as a passenger in an aeronautic expedition or operation? If appellant meant to exclude liability for double indemnity while riding as a passenger or otherwise in any kind of aircraft, why did it not say so in such plain language that a wayfaring man, though a fool, might not be deceived thereby? It would appear a simple thing for a great institution, such as appellant, to write a clause in its policies exempting itself from such liability in plain and simple language."

The clause "as a result of or while participating in aeronautics or air travel" does not apply to a person who is injured after he has completed an airplane flight and has safely alighted from the plane.

In the instant case, the trip had ended several minutes before the accident, and both the pilot and plaintiff had left the plane. The plaintiff did not intend to return to El Dorado in the plane, but was present at the airport when the pilot was preparing to leave on the return trip. The pilot decided that it would be advisable for someone to hold the brake while he started the motor, and to accommodate the pilot, plaintiff held the brake until the motor was started by the pilot. When that was done the plaintiff had nothing else to do but to leave the airport and that he was doing when he came in contact with the propeller. Suppose he had been injured by being struck by an automobile at the airport, or had been injured at the airport by coming into contact with a wire carrying a heavy charge of electricity, it could not be said, logically, that such an injury was caused by or resulted from the fact that he had arrived at the airport in a plane which he had piloted on a part of the journey.

At the very least, the clause in the instant case is doubtful and ambiguous, and, as stated by the Court in Missouri State Life Ins. Co. v. Martin, 188 Ark. 907, at page 910, 69 S.W.2d 1081, at page 1083:

"The contract of insurance was ambiguous and susceptible to more than one reasonable construction, and the one most favorable to the insured should be adopted."

The Court further said, 188 Ark. at page 916, 69 S.W.2d at page 1085:

"Counsel for appellant erroneously contend that, because the language relied upon does not create a forfeiture of the policy, but simply states a risk which was never assumed, the rule that the language of the phrase involved should be strictly construed— and, where ambigous, against the insurance company—has no application. The rule of strict construction applies to exemption from liability as well

as to forfeitures." See also, Martin v. Mutual Life Ins. Co. of New York, 189 Ark. 291, 295, 71 S.W.2d 694; Note, 1 Arkansas Law Review 186.

A further indication that the clause in the instant case either does not apply to the plaintiff or is at least ambiguous is the fact that the defendant made payments to him under the policy for eighteen months with full knowledge of the exact manner in which the plaintiff was injured. The evidence indicates that the reason the defendant stopped making payments was because of the belief that the plaintiff was only entitled to $1,500 for the loss of an eye, and the contention as to the aeronautics clause seems to be a mere afterthought. Mr. D. E. White testified that:

"I am going to say that I have no recollection of the loss of an eye until they wrote me and told me that there was a specific loss provision and that no further benefits would be payable * * * they told me that it had been overpaid and that no benefits would be paid because of the specific provisions of the policy."

In summary, the Court is faced with three questions in regard to the aeronautics clause. (1) Was plaintiff participating in aeronautics or air travel at the time he was injured? (2) Did plaintiff's injuries result from participating in aeronautics or air travel? (3) Is the clause ambiguous?

As to the first question, it is clear that plaintiff was not so participating. In The Equitable Life Assurance Society of the United States v. Dyess, supra, the Court at page 1027 of 194 Ark., at page 1265 of 109 S.W.2d, said:

" * * * Webster defines the word 'aeronautics' to be 'the science that treats of the operation of aircraft; also the art or science of operating aircraft.' "

Certainly, plaintiff, at the time he was struck by the propeller, was not "operating the aircraft" or in any manner participating in aeronautics or air travel. See Tierney v. Occidental Life Ins. Co. of California, supra.

As to the second question, the Court feels that the reasoning of the Tierney case is insurmountable and that plaintiff's in-

juries did not result from his participation in aeronautics or air travel.

In any event, while there is a possibility that the clause was intended to cover such accidents as the one herein involved, the language used fails to verbalize such an intention. It is true that the clause might be construed to cover this accident, but a much more logical conclusion is that it does not. At best, the clause is ambiguous in this respect and should be construed against the defendant.

Therefore, the plaintiff is entitled to recover the sum of $200 per month under part C of the policy so long as he is wholly and continuously disabled and under the professional care and attendance, at least once a week, of a legally qualified physician other than himself, until he reaches his 60th birthday, and at the rate of $100 per month thereafter so long as he lives and suffers total loss of time.

He should recover at this time the sum of $200 per month for 23 months from November 29, 1950, to the date of the trial, October 29, 1952, or $4,600, together with $552, being the statutory penalty of 12 per cent.

In addition to the above sum of $5,152, the plaintiff is entitled to recover a reasonable attorney's fee of $1,250, which should be taxed and paid as costs by the defendant.

A judgment in accordance with the findings of fact and conclusions of law as herein filed, and in accordance herewith, is being entered today.