MARIE F. BEW, APPELLANT, v. THE TRAVELERS' INSUR-
ANCE COMPANY, A CORPORATION, RESPONDENT.

Argued November 19, 1920—Decided February 28, 1921.

On appeal from the Supreme Court.

This was an action at law in the Supreme Court tried at
the Atlantic Circuit before the court without a jury, and re-
sulted in a nonsuit, upon which judgment was accordingly
entered in the Supreme Court.   In granting the nonsuit,
Judge Donges, who presided, delivered the following opinion:

"The plaintiff is the beneficiary of a policy of insurance
entered into June 16th, 1914, between James W. Bew and the
Travelers' Insurance Company.   Premiums were paid when
due and the policy was in force on May 24th, 1919, when the
assured was killed by the falling of an airplane in which he
was riding.   The policy was written in the sum of $3,000.

"The policy contained the following condition:

" 'The insurance hereunder shall not cover any person
under the age of eighteen or over the age of sixty-five years,
nor shall it cover injuries fatal or non-fatal, sustained by the
insured while participating in or in consequence of having
participated in æronautics.'

"Plaintiff insists the following provision of the policy is
applicable in this case:

" 'If such injuries are sustained (1) while a passenger in
or on a public conveyance provided by a common carrier for
passenger service [including the platform, steps or running
board of railway or street railway cars], * * * the com-
pany will pay double the amount otherwise payable.'

"Plaintiff seeks to recover the sum of $6,000, being double
the amount of the normal indemnity.

"At the conclusion of the plaintiff's case a motion was
made for a nonsuit.   The facts were uncontradicted.   Defend-
ant offered no testimony.   Plaintiff moved for a verdict for

plaintiff. It was agreed that if it was concluded that no recovery could be had, the motion for nonsuit should prevail; otherwise, a verdict for plaintiff for the normal amount, or for double the amount thereof, as might be found, should be entered.

"The evidence showed that the insured was an insurance broker at Atlantic City; that the Jaquith Flying Corporation was engaged in the business of carrying passengers for hire in airplanes 'at so much a trip, just to see Atlantic City, and for the novelty of the thing;' that passengers were also taken to New York, Philadelphia and elsewhere as they requested; that the insured had made prior flights; that on the day of his death, the plane left the place of business of the Jaquith corporation, at the Inlet, in Atlantic City, with the pilot, Kendrick, and mechanician, named Badger, and flew to the Airport, also at Atlantic City; that, at the Airport, Badger got out of the plane and solicited persons to take a flight; that Bew entered the plane and occupied the seat beside the pilot vacated by Badger; that Kendrick, as pilot, and Bew, as passenger, left Airport and flew back towards the Jaquith place at the Inlet; when near the Inlet, the plane went into a 'nose-dive,' which resulted in a collision with the earth with such violence that both Bew and Kendrick were instantly killed. It does not appear whether the insured entered the machine as a guest or whether he was to pay for the service. From the testimony it appears that he paid no fare. This is not conclusive that none was to be paid, as it was usual to collect the fare at the conclusion of the flight.

"The first question presented is: Did the insured meet his death 'while participating in or in consequence of having participated in æronautics?'

"It is well settled that courts are averse to forfeitures and in case of doubt or ambiguity will adopt that construction which will defeat it, if such construction is reasonably deducible from the words or terms used. *Hampton* v. *Hartford Fire Insurance Co.,* 65 *N. J. L.* 265.

"Where, however, it becomes necessary to construe words or phrases, the ordinary and usual meaning of the words must

be sought and given to them. But where apt words are used to express the meaning of the party using them, the courts will not adopt a strained and improbable construction in order to defeat a forfeiture. In the instant case a finding rests upon a construction of the words 'participate' and 'æronautics.'

"I have no doubt that the insurance company intended to provide against liability in case of injuries to persons who navigate the air, a means of transportation still regarded as extremely hazardous. The question is whether it has used appropriate language to so provide.

"The Standard Dictionary, and a number of other dictionaries consulted, define 'participate' as meaning 'to receive or have a part or share of; to partake of; experience in common with others; to have or enjoy a part or share in common with others; partake; as to participate in a discussion;' 'to take a part in; as to participate in joys or sorrows.'

"Plaintiff insists that one participates only when he is physically active in the management and control of an instrument or agency, and cites *Mason* v. *Moore, 73 Ohio* 275, in support of this contention. In that case, the court defined what was necessary to render one guilty of participation in a violation of a banking statute, and held 'participation,' as used in that statute, required active conduct in, or affirmative knowledge of, the fraud committed. That case does not support the conclusion that there must be leadership and control of a physical agency in order to constitute one a participant in its use.

" 'Aeronautics' is defined by Encyclopedia Britannica as 'the art of navigating the "air." It is divisible into two main branches—ærostation, dealing properly with machines, which, like balloons, are lighter than the air, and aviation, dealing with the problems of artificial flight by means of flying machines, which, like birds, are heavier than the air.'

"Standard Dictionary defines it as 'floating in or navigating the air, as in a balloon or airship; the art or practice of sailing or floating in the air.'

"It seems clear that 'æronautics' is the art or practice of sailing in or navigating the air.

"There is nothing in the definitions given, or in the common use of the term, to confine it to those who are active in the piloting of air vessels and to exclude those who are inactive users thereof. If it had been intended to confine the application of this provision to those who pilot or manage the physical operations of such vessels, it would probably have been expressed by using some such language as 'engaging in the piloting, management or operation of æronautical vessels.'

"I think that plaintiff seeks to give too narrow a meaning to both words. 'Aeronautics' does not describe a business or occupation, like 'engineering' or 'railroading,' but an art which may be practiced for pleasure or profit, and is indulged in by all who ride, whether as pilots or passengers.

"Is a passenger in a balloon, which is not directed or propelled by any but natural forces, a participant in sailing or navigating in the air? Is an observer in a military plane, who is not piloting it, participating in aviation? Is a military bomber, who does not touch the control of the plane, a participant in aviation? Is the pilot of an airplane, which carries an observer or photographer, or the operator of a machine gun, over enemy lines, but who merely drives his machine, participating in military activities? It seems to me that the answer to all of these queries must be in the affirmative, although the individual in question is not the active agent. The purpose of his flight has no influence upon the question of whether or not he is participating in æronautics. His presence in the plane makes him a participant in the flight which is æronautical.

"If the question were respecting the scope of a provision that the policy did not apply to anyone 'participating in tobogganing,' would it be asserted that the occupants of the sled who had no part in steering were not participating in tobogganing? If one rides in the rear seat of an automobile, is he not participating in automobiling? If one hires a motor boat and crew to take him for a ride on a river, would

it be said that he was not participating in boating? It seems clear that he would be.

"These illustrations show the speciousness of plaintiff's contention.

"I am of the opinion that one who is a passenger in an æroplane partakes of the pleasure and benefits of the art or practice of sailing or floating in the air and thereby participates in æronautics.

"My conclusion being that the insured met his fatal injuries whilst participating in æronautics, the exception in the policy bars recovery in this case, and the motion to nonsuit is granted.

"This conclusion renders it unnecessary to consider whether the insured met his death while a passenger in or on a public conveyance provided by a common carrier."

For the appellant, *Louis A. Stern.*

For the respondent, *Edward L. Katzenbach.*

PER CURIAM.

The judgment under review herein should be affirmed, for the reasons expressed in the opinion delivered by Donges, J., at the Circuit.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 14.

*For reversal*—None.