KEY LIFE INSURANCE COMPANY OF SOUTH CAROLINA *v.* THARP, et al.

No. 43606 November 8, 1965 179 So. 2d 555

*Cooper & Allen,* Indianola, for appellant.

*Clark, Townsend & Davis,* Indianola, for appellees.

Lee, C. J.

This was a suit by W. W. Tharp and others, the sole heirs at law of George Tharp, a minor, deceased, against Key Life Insurance Company of South Carolina, a corporation, to recover, under the terms of the insurance policy, the sum of $1,000.

It was alleged that a group policy was issued by the company to the Indianola Municipal Separate School District. The deceased was a pupil in that school, and paid a premium of $3.00. Under the terms of the policy, the students and teachers of the school, named in the policy, were insured against accidental death under the following provision:

"1. WITHIN A SCHOOL BUILDING OR ON THE SCHOOL GROUNDS . . . .

(b) Students are covered while participating in any activity (other than the practice or playing of senior

high school football) under the sponsorship and direct and immediate supervision of the Policyholder.''

The answer of the defendant denied that the death came within the provisions of the policy.

At the close of the evidence, the Court refused a peremptory instruction for the appellant, and granted one instead to the plaintiff.

George Tharp was between 15 and 16 years of age and was in the 9th grade. On March 19, 1963, he attended school, meeting his arithmetic class during the first period. Young Tharp was also a member of the class, which met with Prof. Bob Luter, the teacher of Agriculture and Shop Work, the second period from 9:00 until 10:00 o'clock that morning. He was supposed to report to the Shop, where it was Luter's custom to check the roll and assign the work to be done. That morning Luter assigned Joe Tabb, a pupil, to drive the tractor for work on the school athletic field, with James Cantrell, another pupil, to assist in putting water into the roller, which was leaking. So far as Luter knew, Tharp did not report to the Shop that morning, but absented himself from the class without the teacher's knowledge or permission. He said that Tharp was supposed to have been in his shop, and that he had no assignment in the operation of the roller. He said that he had warned the entire class to stay off of the roller. The rolling itself was a one man job.

James Cantrell testified that Prof. Luter had sent him and Joe Tabb to pack the track on the athletic field with the roller. Tabb testified that he had just taken over the driving of the tractor and Cantrell got behind him. George Tharp came out to the track and was ''riding around''. They stopped the tractor and Tharp got off. At that juncture, Charles Grant called and said, ''Come on, George, and ride around to the gate with us and we will get off.'' Tharp got back on the roller frame and the vehicle had gone only a short distance when he fell

under the roller and was run over. When the witness first saw Tharp on the athletic field, he was walking toward the roller. He also pointed out the place on the roller frame, the bar between the tractor and the roller, where Tharp was sitting at the time.

Under the above quoted provisions of the policy, since there was no connection with football "students are covered while participating in any activity . . . under the sponsorship and direct and immediate supervision of the policy holder."

The activity was on the athletic field and was under the sponsorship of the school. Besides, the activity was also under the direct and immediate supervision of the school. This leads to the inquiry as to whether Tharp was participating in the activity at the time of his death.

However, the appellant takes the position that Tharp was not on a mission for the school. He was not in class. He was not engaged in constructing the track — he was not even working. He had not been assigned any task on the project. He was there without the knowledge of the school authorities, and they had not consented for him to be there. They had not directed him to leave his class. They did not know that he was riding on the roller. He was not engaged in doing anything for the purpose of packing the track. For these reasons, it says, the pupil, in this instance, was not "participating" in this activity, which was under the sponsorship and supervision of the policyholder.

Thus, the question arises as to the meaning of the phrase "while participating in the activity."

The verb "participate" is defined as "to receive or have a part or share of; to partake of; experience in common with others; to have or enjoy a part or share in common with others; partake; as to 'participate' in a discussion. To take a part in; as to participate in joys or sorrows." Black's Law Dictionary, 4th ed. It cites Bew v. Travelers' Ins. Co., 95 N.J.L. 533, 112 Atl. 859, Annotation, 14 A.L.R. 983 (1921).

Webster's Third New International Dictionary gives 'participate' the following definition: "1. Partake; 2. to impart a share of; to possess some of the properties, qualities, or attributes of something; possess something of the nature of a person or thing; 2a. to take part in something (as an enterprise or activity) usually in common with others; 2b. to have a part or share in something."

Webster's New International Dictionary, 2d ed., gives the following definition; "To have a share in common with others; to partake; share, as in a debate."

It is well to give consideration to the following cases: Bew v. Travelers' Ins. Co., 95 N.J.L. 533, 112 Atl. 859 (1921), Annotation, 14 A.L.R. 983 (1921); Gregory v. Mutual Life Ins. Co., 78 Fed. 2d 522 (8th Cir. 1935); Chappell v. Commercial Cas. Ins. Co., 120 W. Va. 262, 197 S.E. 723 (1938); Mutual Benefit Health & Acc. Ass'n. v. Bowman, 99 Fed. 2d 856 (8th Cir. 1938); Fireman's Fund Indem. Co. v. Hudson Associates, Inc., 97 N.H. 434 91 A. 2d 454 (1952); Black Hills Kennel Club, Inc., v. Fireman's Fund Indem. Co., 77 S.D. 503, 94 N. W. 2d 90 (1955).

In all of the above styled causes, the courts were construing insurance policies where liability was excluded if the insured was participating in the particular event. For instance, in the Bew case, *supra,* the insured was a passenger in an airplane, which crashed. The policy exclusion was against participation in aeronautics. The court reasoned that the flight of an airplane was aeronautical; that the deceased participated in the flight; and that, therefore, he participated in aeronautics. Consequently, liability for the death was denied. This was one of the pioneer cases and was followed by a number of others.

Thereafter the Gregory case, *supra,* was decided in 1935. In that case, the company refused to pay the double indemnity benefit because of the exclusion which

provided that it would not be liable for such benefit, resulting from ''participation in aeronautics.'' The opinion, in holding that this expression was doubtful and ambiguous, at page 524, said:

''Insurance companies know that the public to which they are selling insurance is to a greater or less extent so traveling. These companies either intend to insure against accident resulting from the use of the airplane as a means of transportation, or they do not, and it is only fair that if they do not intend to include such hazards that it should be made so clear that a person of ordinary intelligence on reading the contract offered will readily understand that such hazard is not covered. The expression, being doubtful and ambiguous, must be construed most strongly against the insurance company.'' Citing, Wharton v. Aetna Life Ins. Co., (C.C.A. 8) 48 Fed. 2d 37; Gorman v. Fidelity & Casualty Co. (C.C.A. 8) 55 Fed. 2d 4; Northwestern National Life Ins. Co. v. Banning, (C.C.A. 8) 63 Fed. 2d 736.

This case was followed by Chappell v. Commercial Casualty Ins. Co., *supra.*

In the Chappell case, *supra,* there was the exclusion for death or disability of an insured ''while participating in aeronautics''. The opinion went into a discussion of the meaning of the word ''participate.'' It quoted from the New Century Dictionary, to the effect, that ''participate'' meant ''to take or have a part or share in.'' It pointed out that ''the word denotes either active or passive sharetaking, and, having a double meaning, is patently ambiguous . . . .''; and that this ambiguity was not given significance in the Bew case, *supra.* The opinion further observed that, in order to avoid such ambiguity, some companies had written, into their exclusionary provisions, expressions like 'participating in aeronautics, as a passenger or otherwise'. (197 S.E. at 725).

In the Bowman case, supra, the opinion reminded that a passenger in an airplane was not participating in aeronautics, and that this principle had been approved and followed in a large number of cited cases, including Chappell v. Commercial Casualty Ins. Co., *supra,* and the Chappell case was commented upon at length. Besides, the ambiguity in the word "participates" was pointed out, together with the fact that it had been overlooked in the Bew case, supra.

In the Hudson Associates case, *supra*, the exclusionary provision in the policy was in these words: "It is hereby agreed that this policy does not cover bodily claims on account of accident while practicing for or participating in any contest." The injured party, Knight, as a member of a crew with a jalopy, was in the pit watching the race. There was a collision between two jalopies, and one, out of control, entered the pit and struck him. The opinion cited 67 C.J.S. 879, and made this comment:

> "The word 'participating' has no clear and unmistakable meaning. In its primary sense, it means simply a sharing or taking part with others but when it is applied to a particular situation, it takes on secondary implications that render it ambiguous. Under some circumstances it may denote a mere passive sharing while under other circumstances an implication of active engagement may accompany its use."

Regarding the interpretation of an insurance policy, the opinion cited the test as laid down in Hoyt v. Insurance Co., 92 N. H. 242, 243, saying that such test was "what a reasonable person in the position of the insured would have understood the words of the policy to mean, determined in the light of the circumstances surrounding the insured's operation of the Hudson Speedway."

The opinion went on to say that the persons subject to risk during such an operation, were those on the tracks, and those off the tracks, including those in the grand-

stand; and that those in the pit were not in substantially greater danger than those in the grandstand; consequently the Court concluded that a reasonable person, under the circumstances, could not have understood the clause to exclude any person other than those injured while *actively engaged* in the contest. In other words, to exclude coverage in that instance, active engagement or participation in the game was requisite.

In the Black Hills Kennel Club, Inc., case, *supra*, a six year old boy, standing on the track at the finish line, shouting encouragement to his dog, was held to be an active participant in a dog race within the meaning of the Club's disability policy, which excluded bodily injury sustained by any person "participating" in any contest, and the insurer was not liable for injuries to the boy.

It must be remembered that the packing of the track was done under the direct supervision of the school. However, no teacher was actually present on the ground at the time of the accident. The two boys in charge of the work apparently offered no objection to Tharp's riding to the gate. While the policy provided for liability where the student was "participating", the Court has not been apprised of any exclusionary provision in case the student "participates" without the express consent of the school authorities. While Tharp was not operating the tractor, he was riding on the frame, just like Cantrell, who at the time was not getting water for the roller, but was merely riding behind Tabb.

Under the decisions of this Court, if an insurance contract is in plain and unambiguous language it should be construed as written in the same way as any other contract. Employers Mutual Casualty Co. v. Nosser, 250 Miss. 542, 164 So. 2d 426 (1964); Benton v. Canal Insurance Co., 241 Miss. 493, 130 So. 2d 840 (1961); and citations in those cases.

On the contrary, it needs no citation of authority, and appellant, for that matter, concedes that, if an

insurance contract is ambiguous and capable of two reasonable but different construction, the construction will be adopted which is in favor of the insured since the contract is prepared by the insurer. Griffin v. Maryland Casualty Co., 213 Miss. 624, 57 So. 2d 486 (1952), and authorities there cited.

From a study of the cited cases, it appears that the verb "participate" has been classified as ambiguous and of doubtful meaning. It has been felt necessary, from time to time, to supply the adverbs "actively" and "passively."

Under the facts and circumstances of this case, the Court does not feel inclined to hold that "participate" must mean the contribution of some service, which is calculated to be of benefit to the activity. Immature youths may fully think and intend that their acts may be beneficial, when, in fact, the same may be unproductive of good, or, in fact, may be harmful or dangerous.

If the appellant did not wish to assume coverage in such a case as this one, it could have, by an exclusionary provision, avoided liability therefor. Since it wrote the policy it should not complain, when the instrument is to be construed, if it failed to limit its liability to what it may have intended. Cf. excerpt from the Gregory case, *supra*.

The peremptory instruction for the appellees was properly given. Consequently, the cause must be, and it is, affirmed.

Affirmed.

*Gillespie, Brady, Patterson, and Inzer, JJ.,* concur.