JOSEPH J. McCARTHY *et al.*, Plaintiffs-Appellants, v. ROBERT STREIT, Indiv. and in his official capacity as Worth Township Republican Committeeman, *et al.*, Defendants-Appellees.—JOSEPH DONAHUE *et al.*, Petitioners-Appellants, v. RAYMOND F. MURPHY *et al.*, Respondents-Appellees (Raymond F. Murphy *et al.*, Cross-Petitioners and Appellees; Joseph J. McCarthy *et al.*, Cross–Respondents-Appellants; Ray Heaster *et al.*, Cross-Respondents).—ROBERT J. STREIT *et al.*, Petitioners-Appellees, v. ARTHUR BLISS, Respondent-Appellant (Worth Township Electoral Board *et al.*, Respondents).

First District (1st Division) Nos. 1—89—0127, 1—89—0705, 1—89—0706 cons.

Opinion filed May 8, 1989.

Odelson & Sterk, Ltd., of Evergreen Park (Mathias W. Delort and Burton S. Odelson, of counsel), for appellants Joseph Donahue, George P. Vlasis II, Dave Gallagher, Joseph J. McCarthy, Maureen Murphy, Richard Nick Ruggiero, Robert H. Telander, Herb Elzinga and Arthur Bliss.

Robbins, Rubinstein, Salomon & Greenblatt, Ltd., of Chicago (Robert M. Winter, of counsel), for appellee Raymond Murphy.

Michael C. Moses, of Chicago, for appellees Raymond F. Murphy, Harry Dinaso, Marvin C. James, Michael Levinson, Daniel P. Madden, Gilbert L. Berman, Robert J. Streit, Kevin F. Morgan, Joseph A. Murray, Michael R. Davies, Russell J. Miller, and Kathleen M. Spencer.

Rosenthal, Murphey, Coblentz and Janega, of Chicago (John Murphey, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

These consolidated appeals arose from events occurring at a Republican Party caucus held in Worth Township (the Township) on January 10, 1989, and concerning the April 4, 1989, Township elections. By the trial court's order in No. 89—CO—77, petitioners Robert J. Streit, Kevin J. Morgan, Joseph A. Murray, Marvin C. James, Michael R. Davies, Russell J. Miller, Kathleen M. Spencer and Harry A. Dinaso (the Streit Slate) were ordered to be placed on the ballot as the Republican candidates for various Worth Township offices to be elected in the April 4, 1989, election. The effect of that order was to deny a place on the ballot to a slate of Republican candidates including Joseph J. McCarthy, Maureen Murphy, Richard Nick Ruggiero, Robert Telander, Roy Heaster and Herb Elzinga (the McCarthy Slate).

The McCarthy Slate having been excluded from the ballot, its candidates then formed a new political party, "The Township Choice Party." Objections were filed to their candidacies on the basis that they had participated in an established political party's caucus and were therefore statutorily precluded from third-party candidacy. By its order in No. 89—CO—62, the trial court ordered that eight of the nine candidates of the Township Choice Party be removed from the ballot.

The following issues are raised on appeal: first, whether the trial court was correct in finding that the first electoral board's decision to strike the certificate of nomination of the Streit Slate created vacancies which could be filled by the Republican committeeman with candidates of his choice, and second, whether the trial court erred in removing five candidates of the Township Choice Party from the ballot. We answer both questions in the affirmative.

A statement of the facts discloses a strange series of events in the Township of Worth's nomination process.

In Illinois, in township elections, an established political party may still nominate by way of party caucuses rather than primary election. (Ill. Rev. Stat. 1987, ch. 139, par. 59a.) Pursuant to this section, Republican committeeman Robert Streit chose to nominate candidates by caucus rather than by primary election. The caucus was held on January 16, 1989.

Committeeman Streit presided at the caucus. As previously noted, two slates were nominated, the Streit Slate and the McCarthy Slate. Following the voice vote, permissible under section 6A—1 (Ill. Rev. Stat. 1987, ch. 139, par. 59a.1), the caucus judges declared the Streit Slate the winners. Streit then filed a certificate of nomination naming himself and his running mates the official candidates of the Republican Party.

McCarthy and those on his slate then filed a three-count action in the circuit court of Cook County, McCarthy v. Streit, No. 89—CO—10. Count I sought a declaratory judgment that the caucus was improperly administered and that the McCarthy Slate had won the caucus and an injunction prohibiting Streit from filing the allegedly false certificate of nomination. Count II sought similar injunctive and declaratory relief as well as monetary damages and attorney fees pursuant to 42 U.S.C. section 1988. Count III sought a declaratory judgment that the use of a voice vote at the caucus violated the plaintiffs' right to a secret ballot as guaranteed under the Illinois Constitution, article III, section 3.

A hearing was held on the plaintiffs' motion for a temporary restraining order on January 12, 1989. The trial court dismissed the complaint on the basis that the matter was a political question and therefore not justiciable. Plaintiffs sought an expedited appeal (McCarthy v. Streit, Ill. App. Ct. No. 89—0127) which was denied, in effect mooting the case as the April 4 election would have passed before the appellate court would have reviewed the case on its merits.

Streit then filed a certificate of nomination. Arthur Bliss and others filed objections to the Streit Slate on the basis that the certificate did not accurately reflect the result of the Worth Township Republican Caucus. On February 20, 1989, the electoral board impaneled to consider the matter sustained the objections, declared the nomination of the Streit Slate to be invalid and declared that those on the slate not be certified on the printed ballots for the April 4, 1989, election. (No. 89—WTEB—7.) No one appealed from that electoral board's decision.

On February 27, 1989, the Republican caucus reconvened and by resolution renamed the Streit Slate as the Republican Party's candidates for the April 4, 1989, general election for Worth Township offices. The resolutions alleged that the first electoral board decision caused "vacancies in nomination" which Streit, as the Republican committeeman, was empowered to fill. Arthur Bliss filed a second set of objections to these nominations, seeking to have the resolutions to fill the vacancies declared invalid.

A second electoral board was named and on March 7, 1989, sustained the objections to the new nominations and ordered that the candidates submitted for the purpose of filling vacancies caused by the first electoral board's action not be printed on the April 4, 1989, ballot as the Republican candidates. The Streit Slate filed a petition for judicial review of this March 7, 1989, action of the second electoral board. On March 13, 1989, the circuit court of Cook County reversed the second electoral board's decision and ordered the Streit Slate printed on the April 4, 1989, election ballot for Worth Township.

Having been thus far excluded from the ballot, the McCarthy Slate decided to pursue a third-party bid under the newly formed Township Choice Party. Objections were filed (cases Nos. 89—WTEB—5 and 89—WTEB—6) alleging that McCarthy and his running mates could not pursue third-party bids as they had "participated" at the Republican caucus and were therefore precluded from participating as third-party candidates under section 6A—1.1 (Ill. Rev. Stat. 1987, ch. 139, par. 59a.1).

The Worth Township Electoral Board held a consolidated evidentiary hearing on the objections. Incumbent supervisor McCarthy testified that he attended the caucus and greeted people he knew but did not sign in, vote, make any motions or in any way encourage or discourage his name from being put into nomination. The unrebutted testimony of nominees Murphy, Ruggiero and Elzinga was to the same effect. Incumbent trustee Robert Telander, also on the McCarthy Slate, did not attend the caucus.

The Worth Township officers electoral board conducted extensive hearings after which it ruled that trustee candidates Joseph Donahue, George P. Vlasis II and David Gallagher had participated at the Republican caucus and were therefore precluded from third-party candidacy. The board found, however, that Joseph McCarthy, Maureen Murphy, Richard Ruggiero, Robert Telander, Ray Heaster and Herbert Elzinga had not participated at the caucus and therefore were not precluded from third-party candidacy. The basis for the

board's decision to remove Donahue, Vlasis and Gallagher was that each had signed an affidavit at the caucus which included a disclaimer that signing in constituted participation and would preclude an individual signing from filing thereafter as a third-party candidate. The other candidates had not signed the affidavit. The board found the evidence relating to their presence or actions at the caucus insufficient to warrant a determination that they had participated in the caucus.

Petitioners-appellants Donahue, Vlasis and Gallagher filed a petition seeking to overturn the electoral board's decision and be restored to the ballot. The objectors filed a cross-petition, seeking to have McCarthy, Murphy, Ruggiero, Telander, Elzinga and Heaster removed from the ballot. The trial court affirmed the electoral board's decision as to petitioners-appellants, thereby keeping them off the ballot, but reversed the board's decision as to the cross–respondents-appellants (including candidate Telander), thus removing them from the ballot. These appeals followed.

As stated previously, appeal No. 89—0127 is moot.

■■■ At issue in appeal No. 89—0706 is whether the trial court erred in ruling that vacancies occurred on the Republican slate due to the decision of the first electoral board that the certificate of nomination was invalid, and that those vacancies could be filled by resolution with the same candidates who had been previously stricken. See Ill. Rev. Stat. 1987, ch. 46, pars. 10—11, 7—61.

Section 10—11 of the Election Code provides that, "Any vacancy in a nomination by caucus of an established political party for a township or municipal office shall be filled in accordance with Section 7—61 of this Code." Ill. Rev. Stat. 1987, ch. 46, par. 10—11.

Under section 7—61 (Ill. Rev. Stat. 1987, ch. 46, par. 7—61):

> "Any vacancy in nomination occurring after certification but prior to 15 days before the general election shall be filled within 8 days after the event creating the vacancy."

That there were vacancies in the Republican Party's slate of candidates seems to be undisputed in this case. These vacancies were created by the decision of the first electoral board which on February 6, 1989, sustained Arthur Bliss' objections to the so-called Streit Slate, expressly finding that the January 2, 1989, Republican caucus certificate of nomination did not accurately reflect the results of the caucus. Had that first electoral board certified the McCarthy Slate as the Republican Party candidates and ordered the county clerk to print the McCarthy Slate on the ballot, that dispute could then have been judicially reviewed, saving time and expense. Obviously that

electoral board concluded that it had no jurisdiction to order the McCarthy Slate put on the ballot, generating the instant litigation. By reason of the first electoral board's action, as of February 20, 1989, there were no properly certified candidates of the Republican Party.

The vacancies in the Republican Party candidates for the various Worth Township offices in the April 4, 1989, election caused by the unappealed electoral board decision of February 20, 1989, had to be filled by February 28, 1989. The Illinois Election Code provides that "any vacancy in nomination occurring after certification but prior to 15 days before the general election shall be filled within 8 days after the event creating the vacancy." See Ill. Rev. Stat. 1987, ch. 46, pars. 7—61, 10—11.

Logic, common sense, and parliamentary procedure would seem to dictate that the initial caucus be reconvened. Unfortunately, the Illinois Election Code does not clearly provide for doing so. In reading the Code with respect to vacancies in a party's nominations for township officers, the Code is ambiguous.

First the Code provides for township committeemen. They are not public officers and are only accountable to the members of political parties. (*People v. Kramer* (1928), 328 Ill. 512, 519, 160 N.E. 60.) The powers vested in the township committeemen are not spelled out in the Illinois Election Code. The Code merely states that "[e]ach committee and its officers shall have the powers usually exercised by such committees and by the officers thereof, not inconsistent with the provisions of this Article." (Ill. Rev. Stat. 1985, ch. 46, par. 7—8(i).) Nothing in the act expressly confers on a township committeeman the power to fill vacancies in his parties' slate of candidates. Nor are there any statements in this record disclosing what powers are "usually exercised" by a township committeeman. It appears, however, that it is consistent with this general grant of authority that where vacancies appear, the committeeman would be empowered to fill them.

In reaching the conclusion that vacancies in nomination existed and that Streit had the authority to fill them, the trial court relied on *People v. Hartley* (1897), 170 Ill. 370, 48 N.E. 950. In *Hartley*, a convention was held and the certificate of nomination was prepared but the county clerk refused to place the nominees on the ballot for the reason that the certificate had not been filed 30 days before the day of the election. The Republican county central committee then met and filled the alleged vacancies by nominating the same nominees for the same offices. The county clerk again refused to place the names of the nominees on the ballot and the relators filed a writ

of *mandamus* to compel him to do so. The language of the law then in effect provided that "should any certificate of nomination be held insufficient or inoperative by the officer with whom they may be filed, the vacancy or vacancies thus occasioned may be filled by the political party *** making the original nominations ***." (1891 Ill. Laws 110.) The court on appeal concluded that when the first certificate became inoperative, it followed under the provisions of the statute that there were vacancies to be filled. The court found that the vacancies were filled in the manner prescribed by law and that there was no reason why the vacancies could not be filled with the original nominees. (*People v. Hartley*, 170 Ill. at 372.) As in *Hartley*, there were clearly vacancies here and no basis for finding that they could not be filled by the previous nominees.

The McCarthy Slate, which is challenging committeeman Streit's attempt to fill the vacancies in nomination with the original Streit Slate candidates, had already requested to be placed on the ballot as third-party candidates. In addition, the McCarthy Slate failed to file a timely cross-appeal of the first electoral board's decision within the 10 days required by the Election Code. (Ill. Rev. Stat. 1987, ch. 46, par. 10—10.1.) As a result, members of the McCarthy Slate were ineligible to run as Republicans on April 4, 1989, and there were no Republican candidates on the proposed ballot.

The legislature has provided that a vacancy in nomination occurs where a candidate dies before the election, declines the nomination or "for other reasons." (See Ill. Rev. Stat. 1987, ch. 46, par. 7—61.) The fact that the first electoral board determined that the original Streit Slate was ineligible, pursuant to section 6A—1 (Ill. Rev. Stat. 1987, ch. 139, par. 59a), did not affect their eligibility at a later date to be appointed to fill in existing vacancies. (Ill. Rev. Stat. 1987, ch. 46, pars. 7—61, 10—11.) Accordingly, we find that the trial court correctly determined that vacancies existed in the nominations of the Worth Township Republican Party, that the vacancies could be filled by resolution of the Republican committeeman pursuant to statute (Ill. Rev. Stat. 1987, ch. 46, pars. 10—11, 7—61), and that the vacancies also could be legally filled by the same candidates who had filled the Streit Slate of candidates which had been found by the Worth Township Electoral Board to have been improperly nominated originally by party caucus.

At issue in appeal No. 89—0705 is what constitutes "participation" in a political party's caucus under section 6A—1.1 (Ill. Rev. Stat. 1987, ch. 139, par. 59a.1), so as to preclude an individual from subsequently becoming an independent candidate of a new political

party for the same election.

The objectors charged that the McCarthy Slate candidates who are parties to this appeal[1] participated in the Worth Township Republican Party caucus and thus disqualified themselves from running as candidates of the newly formed Township Choice Party. The electoral board found that candidates Donahue, Vlasis and Gallagher had participated in the caucus and were therefore precluded from third-party candidacy. The board found, however, that McCarthy, Murphy, Ruggiero, Telander, Heaster and Elzinga had not participated and so were not precluded from third-party candidacy.

The board's decision was based on sections 6A—1.1(b)(5), (b)(6) (Ill. Rev. Stat. 1987, ch. 139, par. 59a.1(b)(5), (b)(6)), which state that individuals "participating at an established political party township *** caucus shall *** be precluded from signing a petition of nomination for independent or new political party candidate for the same election [and] be precluded from becoming an independent candidate or candidate of a new political party for the same election." Such laws are commonly referred to as "lock-out" rules. They are intended to protect the integrity of party nominations and to protect the electoral process from splintered parties and disruptive factionalism. (*Citizens for John W. Moore Party v. Board of Election Commissioners* (7th Cir. 1986), 794 F.2d 1254, 1260.) Clearly, if the McCarthy Slate participated at the Worth Township Republican Caucus, they could not then regroup and file as candidates of a third party.

Thus, the determinative question is what constitutes "participation" in a caucus for the purposes of section 6A—1.1(b)(6) (Ill. Rev. Stat. 1987, ch. 139, par. 59a.1(b)(6)). Although other sections of the Election Code specifically set out the conduct being regulated (see, *e.g.*, Ill. Rev. Stat. 1987, ch. 46, par. 7—10), the lock-out rule does not define what constitutes "participation."

In *Special Tax School District No. 3 v. State* (1943), 153 Fla. 292, 296-97, 14 So. 2d 405, 407-08, the Florida Supreme Court concluded that participation, as it applies to an election, means nothing short of actual voting. In *Key Life Insurance Co. v. Tharp* (1965), 253 Miss. 774, 781, 179 So. 2d 555, 558, the court made the following observations as to the meaning of participation:

> " 'The word "participating" has no clear and unmistakable meaning. In its primary sense, it means simply a sharing or taking part with others but when it is applied to a particular

---

[1]Although appeals were initially filed by both petitioners-appellants and cross-respondents-appellants, only the latter have pursued this appeal.

situation, it takes on secondary implications that render it ambiguous. Under some circumstances it may denote a mere passive sharing while under other circumstances an implication of active engagement may accompany its use.' " Quoting *Fireman's Fund Indemnity Co. v. Hudson Associates, Inc.* (1952), 97 N.H. 434, 91 A.2d 454.

Under either definition, it appears that in the context of a caucus, the individuals claimed to have participated must either have voted or done something more active than simply being present and observing.

The board ruled that the candidates pursuing this appeal neither voted nor participated in the caucus. The objectors argued that the candidates' precaucus discussion of issues or candidates and post-caucus filing of lawsuit No. 89—CO—10 constituted participation sufficient to prohibit their participation as third-party candidates. The trial court found that upon hearing their names placed in nomination, the candidates should have affirmatively taken steps to have their names withdrawn. We believe the interpretation of "participation" of the objectors and the trial court is overly broad and would have the effect of prohibiting the candidates from exercising their rights of freedom of association and freedom of speech, under the first amendment.[2]

Under the caucus law, one does not voluntarily or officially become a candidate at a caucus. A person's name may be nominated from the floor and if the person is elected by the caucus, he then has the opportunity to file a statement of candidacy and statement of economic interests to accompany the committeeman's certificate of nomination by caucus. Had the members of the McCarthy Slate signed in, placed names in nomination or voted, there would be no question but that they had "shared" in the caucus process and could thereafter be precluded from filing third-party candidacies. Whatever the reasons for their not doing so, the appellants here did none of those things and we do not believe that mere attendance or other peripheral activity, standing alone, should operate to foreclose their third-party candidacies.

Public policy favors candidates' rights to be on the ballot when the laws restricting their access are unclear. (*Merz v. Volberding*

---

[2]Even if nominated by the Republican caucus, the McCarthy Slate or any individual member then could have declined the nomination and run as an independent or as the member of a new party, as did Adlai Stevenson in his 1986 race for governor, withdrawing as candidate of the Democratic Party and running as the candidate of the newly formed third-party, the Solidarity Party.

(1981), 94 Ill. App. 3d 1111, 1117, 419 N.E.2d 628; *Johnson v. Cook County Officers Electoral Board* (N.D. Ill. 1988), 680 F. Supp. 1229, 1233.) In light of the purpose of the lock-out rule and the harshness of the result, we believe it should only be implemented where there are specific, provable, documented actions of a candidate which would be fatal to a third-party candidacy. We are not persuaded that the nonaction of failing to have their names withdrawn from nomination constitutes "participation" under the statute. Accordingly, we find that in case No. 89—0705, the circuit court of Cook County erred in finding that the appellants here had participated in the Republican Party caucus and were thereby ineligible to file as candidates of an independent third party for the April 4, 1989, Worth Township consolidated election.

■■ The McCarthy Slate candidates have also raised the issue that the lock-out statute is unconstitutionally vague and overbroad as it fails to enumerate actions that would constitute participation at a caucus. In light of our finding that the above candidates did not participate, we decline to reach this issue.

For the above-stated reasons, case No. 89—0127 is dismissed as moot; the judgment of the circuit court of Cook County in case No. 89—0706 is affirmed; and the judgment of the circuit court of Cook County in case No. 89—0705 is reversed and the cause is remanded with directions to order the reinstatement of the appellants to the ballot of the Township Choice Party for the April 4, 1989, election.

No. 89—0127, dismissed.
No. 89—0706, affirmed.
No. 89—0705, reversed and remanded with directions.

BUCKLEY and QUINLAN, JJ., concur.